## QUEEN INS. CO. OF AMERICA v. UNION BANK & TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. November 11, 1901.)

### No. 953.

1. INSURANCE—AVOIDANCE OF POLICY FOR BREACH OF CONDITIONS—ESTOPPEL.

Where the owner of a marketable commodity applies to an agent of an insurance company for insurance thereon, stating his purpose to obtain a warehouse receipt for the property, and to give such receipt, together with the policy, to a third party, as security for a loan, and has the loss made payable to the lender as his interest may appear, the insurer is charged with knowledge of such purpose, and, after issuing the policy, cannot avoid the same on the ground that the procuring of the warehouse receipt and the pledging of the same effected a change in the ownership of the property which rendered the policy void by its terms.

2. SAME—AGENCY—EFFECT OF CUSTOM.

The owner of property applied to a firm of insurance agents, representing a number of companies, for insurance thereon. The firm,—not desiring to write the insurance in one of its own companies,—in accordance with a custom prevailing among the insurance agents of the city, turned the application over to the agent of defendant, who issued the policy and delivered it to the firm, which pasted its business card thereon and delivered it to the insured, collecting the premium, which was paid to defendant; the commissions being divided between the two agencies, as was the custom. The transaction was in good faith, and

the insured knew no other agent therein than the firm. *Held*, that the firm was not his agent in the transaction, but the agent of defendant, which must be presumed to have had knowledge of the custom, and, by receiving the premium and assuming the risk, ratified the agency of the firm through whom the application was received in accordance with such custom.

3. SAME—ACTION ON POLICY—PARTIES PLAINTIFF.

Although under the state practice a creditor to whom a loss under an insurance policy is made payable as his interest may appear may maintain an action thereon in his own name, the debtor in whose name the insurance is taken has such an interest in the recovery as to make him a proper party plaintiff; and in any event the defendant is not prejudiced by the fact that the action is brought in the name of the debtor for the use of the creditor, where the statute in such case makes the person for whose use the action is brought the real plaintiff of record, and a judgment otherwise correct will not be reversed on appeal because of such fact.

In Error to the Circuit Court of the United States for the Middle District of Tennessee:

This action was brought to recover on an insurance policy issued by the Queen Insurance Company for $6,000 on a lot of Irish potatoes. Verdict and judgment were rendered in favor of the plaintiff. The facts pertinent to the main issues are as follows: W. M. Jameson carried on a produce business in the city of Nashville, Tenn., under the name of the Nashville Produce Company. One B. B. Bond did a warehouse business in the same building. Murray & Cole were fire insurance agents in Nashville, representing several companies. Nestor & Co. were the local agents of the Queen Insurance Company. There was a custom among the local fire insurance agents of Nashville to the effect that, if any of them received an application for insurance which he did not wish to carry in one of his companies, he might prepare a form, and the risk could be placed with other agencies. The agent issuing the policy and the agent to whom the application had originally been made divided the commission; the latter taking two-thirds, and the former one-third. Mr. Odil was the business manager of the produce company. On January 12, 1898, the day the policy in question was issued, he made application to Murray & Cole, at their office, for a policy for $6,000 on 10,000 bushels of potatoes which the produce company had stored on the second floor of the building in which they were doing business. The building was rented by B. B. Bond. The produce company subrented it from him. Intending to effect a loan, the produce company applied to Mr. Bond for a warehouse receipt for the potatoes, in order to borrow $6,000 from the Union Bank & Trust Company on said receipt and an insurance policy. The agent of the produce company stated to Murray & Cole the intention to procure Bond's warehouse receipt and the loan from the trust company, secured by it and the policy of insurance. He also asked that the policy be written payable to the Union Bank & Trust Company as its interest might appear. Murray & Cole's clerk assented to this, and stated that the produce company would have to send all the other policies to Murray & Cole's office, to have them put in shape. After effecting this arrangement the produce company drew up its note to the Union Bank & Trust Company for $6,000. A warehouse receipt was written for 10,000 bushels of potatoes. Murray & Cole prepared a form of policy, and the insurance was written on "Irish potatoes, in bags, contained in two-story brick, metal-roof building, situated at No. 149, on the west side of South Market street, Nashville, Tennessee; loss, if any, payable to the Union Bank and Trust Company as its interest might appear." Murray & Cole, not wishing to carry the insurance in any of the companies of their agency, took the form to Nestor & Co., the Nashville agents of the Queen Insurance Company, and the policy was prepared with the form attached as presented by Murray & Cole. That firm pasted its business card on the policy and turned it over to Mr. Jameson, who took it to the Union Bank & Trust Company with the note for $6,000 and the warehouse receipt. This

was done upon a previous understanding with the bank as to the making of the loan. The warehouse receipt was changed at the request of the bank, and in the desired form was delivered to the bank, together with the policy of insurance, and the $6,000 was loaned to the produce company. Murray & Cole received two-thirds of the commission on this insurance, and Nestor & Co. one-third. Murray & Cole kept a record of the policy in their office. While it appears that Mr. Jameson knew that Nestor & Co. were the agents at Nashville of the Queen Insurance Company, it does not appear that he had any dealings with them in reference to this policy. The policy contained the condition that it should be void if the interest of the insured should be other than the sole, unconditional ownership of the property insured; likewise if any change, other than by the death of the insured, should take place in the interest, title, or possession of the subject of insurance, except change of occupants without increase of hazard, whether by legal process or judgment, or by voluntary act of the insured, or otherwise.

John J. Vertrees, for plaintiff in error.

M. T. Bryan and James S. Pilcher, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

It is claimed that the policy of insurance in this case is avoided because at the time of the application for and the issuance of the policy the property in question was owned by Jameson, doing business as the Nashville Produce Company, and was at that time in his possession; that after the issuance of the policy the possession was transferred to Bond, and likewise the title transferred by the assignment of a warehouse receipt to the Union Bank & Trust Company. There is no dispute in the testimony as to the good faith of Jameson in making the application to Murray & Cole, or that they were advised of the purpose of the assured as to the property to be covered by the policy. Murray & Cole were told that it was the purpose of the applicant to obtain a warehouse receipt for the potatoes, and to give this receipt, together with the insurance policy, as security for a loan to the Union Bank & Trust Company. This knowledge, fairly and fully brought home to the agent of the company, is the knowledge of the company; and, in view of this fact, it could not avail itself of such conditions as are relied upon in the present case as a defense to the action. Attributing the knowledge of the agent to the company, it could not accept the risk upon such representations of the purposes of the assured, and then, because of conditions contained in the policy, avoid liability because of subsequent changes of possession or transfer of title, made exactly as the insured advised the company was his purpose to do when the policy was issued. The overwhelming weight of authority sustains this proposition, and we do not understand the learned counsel for the plaintiff in error to contend that if Murray & Cole were the agents of the Queen Insurance Company in the transaction, and had knowledge of the purposes for which the policy was taken out, the company could avoid its liability. The important question in this case is, whose agents were Murray & Cole? Were they the agents of the produce company or of the Queen Insurance Company? The produce company sought to obtain a policy of insur-

ance upon this property. It had dealt with Murray & Cole, and knew them to be the agents of a number of insurance companies in Nashville. The produce company did not apply to a broker to go out and obtain a policy of insurance. It sought persons dealing in insurance, and undertook to buy from them, as agents of the insurance companies, $6,000 of indemnity against loss by fire. In obtaining the amount of insurance the produce company had no go-between. It dealt as a principal with those who were dealing in insurance. The application was made to persons known to have authority to receive applications and to issue policies of insurance. To these persons it made a fair and full statement of its purposes in procuring the insurance. The produce company employed no agent in the transaction. It received from Murray & Cole a policy upon which it paid the premium. It did not know that Nestor & Co. were in the transaction, and never had dealings with them concerning it. It obtained the policy of insurance from the agents to whom it applied. So far as the produce company is concerned in the payment of the premium and the obtaining of the policy, it is as though Murray & Cole had issued a policy in one of their own companies. How stands the transaction in view of the part the Queen Insurance Company has taken in it? A custom prevailed in Nashville, which it must be presumed to have known, permitting agents to place insurance with other companies, dividing the commissions. Nestor & Co. turned over this policy to Murray & Cole, who received two-thirds of the commission. By them it was delivered to the insured, with the imprint of Murray & Cole thereon. The insurance company received the premium and assumed the risk. We see no reason why the general principle that an agency may be ratified is not applicable to this case. By accepting the risk and receiving the premium the Queen Insurance Company ratified the action of Murray & Cole in issuing the policy. By this ratification it made them its agents for the purpose of issuing this policy as effectually as it would have done had Murray & Cole been its regular agents in Nashville. These conclusions are supported by a number of well-considered cases. May v. Assurance Co. (C. C.) 27 Fed. 260; Mesterman v. Insurance Co., 5 Wash. St. 524, 32 Pac. 458, 34 Am. St. Rep. 877; McGraw v. Insurance Co., 54 Mich. 145, 19 N. W. 927; McElroy v. Insurance Co., 36 C. C. A. 615, 94 Fed. 990; Insurance Co. v. Hartwell, 123 Ind. 177, 24 N. E. 100; Insurance Co. v. Wiard, 59 Neb. 451, 81 N. W. 312. In the case of Insurance Co. v. Ewing, 32 C. C. A. 532, 90 Fed. 217, decided in this court November 9, 1899, it was held, under circumstances similar to those in the present case, that the agent obtaining the policy was not the agent of the insured. Whether he was the agent of the insurance company was left undetermined. We think the reasoning in that case in harmony with the conclusion we have reached. In the present case the court left it to the jury to say whether, in view of the language of the policy and the circumstances of the case, Nestor & Co. had knowledge of the intended purposes of the insured in reference to this policy. Upon the undisputed facts, we are of the opinion that the jury might

have been instructed that the knowledge of Murray & Cole prevented the insurance company from making the defense relied upon as to the subsequent changes of title and possession of the insured property. In this view, the instruction complained of worked no harm to the plaintiff in error.

A further question is urged upon our attention, and concerns the manner in which the suit was prosecuted. The action was originally brought by the Union Bank & Trust Company, the Nashville Produce Company, and the Produce Company for the use of the Union Bank & Trust Company. The defendant demurred, contending that the Union Bank & Trust Company was the only party in interest entitled to recover upon the policy. The demurrer was sustained, and the plaintiff granted leave to amend, and to elect to sue either in the name of the Union Bank & Trust Company alone, or in the name of the Nashville Produce Company or W. M. Jameson for the use of the Union Bank & Trust Company. It seems to be held in Tennessee that a mortgagee who insures the mortgaged property in the name of the mortgagor, loss payable to the mortgagee as his interest might appear, himself paying the premiums, where the mortgage debt exceeds the insurance, may sue alone upon the policy. Donaldson v. Insurance Co., 95 Tenn. 280, 32 S. W. 251. Other well-considered cases hold that the party with whom the contract of insurance is made is at least a proper party to the action. He has an interest to see that the debt is paid. He is liable on the contract to the insurer. He may end the rights of the lienor, to whom the loss is to be paid as his interest may appear, by liquidating the debt, and has hence an interest in the action. Winne v. Insurance Co., 91 N. Y. 185; Williamson v. Insurance Co., 86 Wis. 393, 57 N. W. 46, 39 Am. St. Rep. 906. It is to be remembered that we are dealing with the question now in an appellate court, and the inquiry is whether there is substantial error in the record, to the prejudice of the plaintiff in error. If, under the Tennessee practice, the Union Bank & Trust Company were alone entitled to bring the action, what prejudice has resulted to the plaintiff in error by permitting the suit to be prosecuted in the name of the produce company for its use? The Tennessee Code provides (section 2795), "In all suits prosecuted in the name of one person for the use of another, the person for whose use the suit is brought will be held the real plaintiff of record." Under this statute the real party in interest was in court, and, if appellant's contention be correct, was entitled to the sole recovery in the case. It is effectually barred from any further recovery on the cause of action sued upon, and, assuming that it might have brought the action alone, the plaintiff in error has not been prejudiced, and a judgment otherwise correct should not be disturbed for this reason.

Other errors assigned are not pressed in the argument. Finding no error in the proceedings of which the plaintiff in error may complain, the judgment will be affirmed.