### AS TO LEGALITY OF NOTICE OF LOSS.

Circuit Court of Cuyahoga County.

ROYAL INSURANCE COMPANY v. M. SILBERMAN.

Decided, November 18, 1904.

*Insurance—Soliciting Agent, Not Agent for all Purposes—Question of Performance of Conditions for Jury—Parol Evidence of Custom Not Admissible to Vary Written Contract.*

1. Section 3644, Revised Statutes, making the agent who solicits insurance the agent of the company, does not make him the agent of the company for all purposes, but only those connected with the negotiation of the contract, and notice of loss given to such agent will not constitute notice to the company.
2. Where an insurance policy provides that immediate notice of loss shall be given the company, it is a question for the jury to determine, whether, under all the circumstances in the case, the insured has complied with that requirement in giving notice of a loss.
3. In determining whether or not the insured has complied with the condition of a policy that immediate notice of loss be given the company, evidence of a local custom by which notice of loss is given to the agent soliciting the insurance, is not admissible.

*Carpenter, Young & Stocker,* for plaintiff in error.
*C. W. Stage* and *W. G. Guenther,* contra.

MARVIN, J.; WINCH, J., and HALE, J., concur.

This is a proceeding in error brought here to reverse a judgment of the court of common pleas of this county. Silberman was the owner of certain chattel property, baled rags, which were stored in a warehouse. Silberman obtained a policy of insurance upon these goods from the Royal Insurance Company. The insurance was brought about by one Max Levi obtaining for Silberman an application for this insurance. Levi represented no insurance company in which the risk would be taken; he applied to another insurance firm, Snider & Crittenden, and they again make the application, or called the attention of the agents, Tremaine, Draper & Company, of the Royal Insurance Company, and the policy was issued, put into the hands of Levi, and by him delivered to Silberman and the premium paid to Levi. The commissions were, undoubtedly, divided between the agents.

On the 19th day of August, 1901, a fire occurred which injured this property, and suit was brought to recover for this injury to the property by fire.

The insurance company set up as a defense that notice of the loss was not given to it as required by the terms of the policy.

The language of the policy in that regard to notice is: "If fire occur the insured shall give immediate notice of any loss thereby, in writing, to this company."

On the 20th day of August, 1901, the day following the fire, Silberman gave oral notice to Levi of the loss. Levi told him to make out a bill showing his loss, and this he did. Levi communicated to the firm of Snider & Crittenden the fact that the loss had occurred.

The testimony in regard to this notice to Levi was admitted by the court under objection of the defendant, and the court having allowed the testimony, charged the jury upon the effect of such evidence. Before giving the language of the court in its charge, attention should first be called to Section 3644 of the Revised Statutes of Ohio, which reads:

"Section 3644. (*When solicitor held to be agent of insurer.*) A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party company or association thereafter issuing a policy upon such application or renewal thereof, anything in the application or policy to the contrary notwithstanding."

The court charged the jury, in effect, that if they found that
Levi solicited this insurance, the premium was paid to him, and
he delivered the policy to the assured, then he was the agent of
the company, upon whom it would be proper to serve notice of
the loss under the policy, and that he would have authority to
waive the conditions in the policy, which has already been read,
that notice in writing must be given to the company in case of
loss.   There was no error in the admission of this testimony, if
there was no error in the charge.   It may be that the testimony
might be admitted, though the charge was wrong.

Counsel representing the assured has furnished us a brief, and
called attention to a considerable number of authorities in oral
argument, all of which have been examined.   An authority to
which attention was not called is Section 419 of *Wood on In-
surance,* which reads:

"Where an agent is entrusted with policies signed in blank,
and is authorized to issue them upon the application of parties
seeking insurance, he is thereby clothed with apparent authority
to bind the party in reference to any condition of the contract,
whether precedent or subsequent, and may waive notice or proofs
of loss, and may bind the company by his admission in respect
thereto."

A number of the states have statutes similar to our statute,
Section 3644, passed for the purpose of protecting people who
obtain insurance through agents from the defenses which were
made in many cases that the agent had not authority from the
company, and that, therefore, representations made by such
agent were not binding upon the company.

In Iowa, the statutes provide, "That he who solicits the insur-
ance shall be the soliciting agent of the company," and under
that statute it is held that knowledge of such agent of conditions
existing at the time of the issuance of the policy, though they
may be such as are negatived by the application, and are such
as under the terms of the policy would forfeit the insurance,
constitutes knowledge of the company.   To that effect is the case
of *St. Paul Fire & Marine Insurance Company* v. *Schafer,* 76
Iowa, 82.   In that case the policy was different from that which
the insurance company intended and from that which any agent

of the company was authorized to issue. The fact was, however, that it was not the regular agent of the insurance company, but one who was only so by force of the statute, to whom the conditions were known. The company brought suit to reform the contract after the fire; the court held that the knowledge of that soliciting agent was the knowledge of the company, and they could not, therefore, maintain their suit to reform the contract.

Other cases in Iowa are to that effect and hold that whatever knowledge the soliciting agent had, that is, he who solicits the insurance, and who by virtue of the statutes is the soliciting agent, is the knowledge of the company.

In Wisconsin the statutes provide: "That he who solicits the insurance is the agent of the company to all intent and purpose," and it is held that such agent may, after the policy is issued, waive the provisions that there shall be no other insurance upon the property, without the consent, in writing, endorsed upon the policy of the company issuing the policy. It was so held in the case of *Schomer* v. *Hekla Fire Insurance Co.*, 50 Wis., 575.

Attention has also been called to the case of *Pollack* v. *German Fire Insurance Company of Pittsburg, Pa.*, 86 N. W., 1017. In this case, however, the direct question of whether the soliciting agent is the agent of the company, beyond being such agent for the purpose of the contract made between the insurance company and the assured by virtue of the policy is not raised. And the strongest authorities in that regard that we find are the authorities cited in *Wood on Insurance*, under Section 419, to which attention has been called.

*Elliot on Insurance*, Section 165, which was not cited to us in the argument, but which seems to us to be directly in point, reads as follows:

"Section 165. (*Notice of Loss to Local Agent.*) The local agent of a fire insurance company had actual authority to accept applications for insurance, fix the premium or rate of insurance, and fill up, countersign and issue policies thereon, which he received from the company, already signed by its president and secretary. This was the extent of the agent's actual authority, and there was no evidence tending to show that his apparent authority was other or greater than his actual authority. The

policy required written notice of loss to be given to the company. It was held that the agent had no authority to receive or waive notice of loss and, hence, notice to him was not notice to the company.''

It will be noticed that the agent here spoken of was the local agent, but he had authority to accept applications for insurance, to fix the premium or rate of insurance, to fill up and countersign and issue policies therein which he received from the company already signed by the president and secretary.

In another section of *Elliot on Insurance* is a discussion of the construction of the statutes.

In Section 157 there is a discussion as to the agency of insurance brokers; and in other sections a discussion as to the difference between general and special agents. And, perhaps, one of the matters to be considered in this case is, as to what is meant by the word ''agent'' as used in our statutes.

*Wood on Insurance* adopts the idea that he is the agent of the company for all purposes. But is it necessary to hold that he is an agent for all purposes to accomplish the real purposes for which the statute was enacted? It seems hardly probable that the statute was passed for the purpose of making him an agent beyond the agency one would have who had the actual authority to accept applications, to fix the premiums, to fill up and countersign and issue the policy and receive the premium. One who has authority to do that would be clearly the agent of the company. But in the case referred to here, it was held that that kind of an agent had no authority to receive or waive notice of loss. The authority cited is 63 Minn., 305, and the syllabus reads practically the same as has already been read from Elliot; indeed, I think the language is the same.

Now, I know that it does not appear from the statutes that he who is there designated or declared to be the agent of the company shall be only the local agent; but what has already been said seems to us to show that he ought not to be held by reason of the statutes to be an agent with greater authority than the agent spoken of in this case; and though he is such agent, that his knowledge of conditions and facts at the time of the issuing

of the policy is to be held to be the knowledge of the company, and that he may waive the condition that there shall be no other insurance during the continuance of the policy.

In one of these cases to which attention has been called he may waive other conditions during the continuance of the policy while the policy is in force before the loss, yet to say that he is an agent who can do more than the local agent, seems to be carrying the statute further than most of the cases go.

In the case under consideration, I mean the case in 63 Minn., 305, the question seems to be well considered and is fully disposed of. I read from the opinion, beginning on page 309, but premise that by saying that Seeley & Company were the soliciting agents; they were the agents to whom the application was made, who delivered the policy, and who received the premium. The court says:

"If Seeley & Co. were the proper parties to whom to give this notice—in other words, if it was within the scope of their authority to receive notice of loss—we would not feel any doubt but that if, when they received verbal notice, they made no objection to its form, they would be deemed to have waived the omission to give it in writing. But it is self-evident that if they had no authority to receive such notice, then they could waive nothing in the matter. Upon this state of facts, it was not within the scope of the authority of Seeley & Co. to receive or waive notice of loss, and hence notice to them was not notice to the company. Even if there could be any doubt of the correctness of this proposition as a new question, it has been too long and too well settled in this state to be now considered open. *Bowlin* v. *Hekla F. Ins. Co.*, 36 Minn., 433; 31 N. W., 859; *Shapiro* v. *Western Home Ins. Co.*, 51 Minn., 239; 53 N. W., 463; *Shapiro* v. *St. Paul & M. Ins. Co.*, 61 Minn., 135; 63 N. W., 614. But we think the rule is correct upon both principle and authority. It is in accordance with the general principles of the law of agency. It is elementary that a principal is only liable for acts done by his agent within the scope of the authority, actual or apparent, with which the principal has clothed him; that it rests entirely with the principal to determine the extent of the authority which he will give to his agent; also, that every person dealing with an assumed agent is bound, at his peril, to ascertain the nature and extent of the agent's authority.

"In insurance cases courts frequently inaccurately classify agents as 'local' and 'general.' But the extent of the territory

which is to be the field of his agency is no test of the extent of an agent's authority within that field. His field of operations may include the whole United States, and yet his powers be special and limited. On the other hand, his field of operations may be confined to a single county or city, and yet his authority within that field be unlimited. In the present case there is no question of apparent as distinguished from actual, authority. The question is simply one of actual authority, expressed or implied. Authority to act in the matter of a loss under the policy, after it has occurred, is not expressly given. All the authority expressed relates to the making of the contract of insurance. It is a fundamental principle in the law of agency that a delegation of power, unless its extent be otherwise expressly limited, carries with it, as a necessary incident, the power to do all those things which are reasonably necessary to carry into effect the main power expressly conferred. But it is equally fundamental that the power implied shall not be greater than that fairly and legitimately warranted by the facts; in other words, an implied agency is not to be extended by construction beyond the obvious purpose for which the agency was created. We do not think that mere authority to make a contract of insurance carries with it implied authority to act in the matter of a loss under the policy after it has occurred. If the implied authority extends to accepting notice of the loss, it would logically follow that it also extends to proof of loss, and even to the adjustment of the loss—a length to which no court has ever gone. The rule which we have adopted is also in accordance with the general current of the authorities. *Lohnes* v. *Insurance Co.*, 121 Mass., 439; *Smith* v. *Niagara F. Ins. Co.*, 60 Vt., 682; 15 Atl., 353; *Bush* v. *Westchester F. Ins. Co.*, 63 N. Y., 531.

And then the court in this case goes on to say that if it is to be held that proofs of loss may be made to any agent, he may waive proofs of loss and, legally followed out, he might waive the requirements of notice; he may waive the proofs of loss, and he may waive every other matter and adjust for the company, because it can be said that he is the agent of the company; therefore, whatever he does binds the company; but this court say in the opinion no one has ever claimed it went so far as that. That is, that there must be some limit to his agency. We reach the conclusion that the statute does not make the soliciting agent, or the agent who solicits the application, the agent of the com-

pany, authorized to receive notice of loss. But in this connection evidence was permitted to go to the jury, also, as to a custom existing in this city at the time of the fire and at the time of the issuing of this policy, by which those sustaining loss, gave notice to the agent who delivered the policy; that that notice was sent on through whatever intermediate agents there were to the company. That was admitted under objection. We think it was error to admit it.

We have looked at the case in 111 Federal Reporter, 697, in which evidence as to a custom was held proper to be considered, but the custom there under consideration was a custom among insurance brokers by which, if application was made to an insurance broker or agent who could not issue a policy through the company represented by him, he arranged with the agent of some other company; and it was held that the insurance company was bound to know that custom. We think that is far removed from undertaking to show that a contract expressed in terms could by custom mean something different from what it provides.

The statute has said that an agent can do some things, which we have already stated, that will bind the company, though the acts of the agent are in violation of some of the terms expressed in the contract. Beyond that, we do not think the authorities go.

But, on the 17th day of September, 1901, written notice was given to this company of the loss, and the court submitted to the jury the question of whether that was a sufficient compliance with the requirement that in case of loss immediate notice shall be given to the company. It was twenty-nine days after the loss. It was charged by the plaintiff in error that the court should have said, as a matter of law, that that notice was not a sufficient compliance with the law. In the Minnesota case, from which extracts of the opinion have been read, it was held, as a matter of law, that notice after a period of about sixty days was, under the circumstances of that case, not a sufficient compliance with the requirement. Other cases have fixed certain periods. As a matter of law it has been held that the notice given at a certain time, after a certain number of days, was not a sufficient compliance.

We think here it was proper to leave to the jury whether what was done under all the facts and circumstances of the case, which were proper to be considered, was a sufficient compliance with the requirement to give immediate notice, and but for the fact that we find that the court gave to the jury certain things to take into consideration in determining that question, we should affirm its judgment. But the court in giving to the jury the rulings by which they were to determine whether the notice given on the 17th day of September was a sufficient compliance with the requirement that an immediate notice be given, said:

"And in determining whether or not the notice was given within reasonable time, you will consider all the circumstances in the case; consider the character of the plaintiff; the fact that he is a foreigner by birth; that his mother language is not English; that he neither reads English or writes it, nor speaks it very well; those are all circumstances affecting the obligation to be prompt. And you may also in that connection consider certain testimony which was introduced tending to show that it is the uniform custom in this city to give notice to the agent who has procured the risk; you may consider that as throwing light upon the propriety of his not giving any further notice for twenty-nine days."

We think the court called attention to some things which the jury ought not to have been permitted to consider, and especially this matter of "custom." We do not think that that bore at all upon the question of whether he should have given notice earlier, in writing. It is a matter of contract, not custom. He had contracted to give notice, immediate notice, which means, of course, within a reasonable time under the circumstances; but that time, we think, can not be varied by any custom which is shown here.

We have not been able to fully satisfy ourselves that the court should call attention to the fact that this man was not native born and did not understand our language. Some countenance is given to that in *Elliot on Insurance,* Section 188, in that the ignorance of the party assured is permitted to be considered; and we should not reverse the case on this branch of it, but for the court telling the jury to consider the custom. We think it legitimate for the jury to consider the question of effort made

by the assured to give the notice by notifying Levi, and we think the evidence on that subject was properly admitted. For that reason then we are not satisfied that it is erroneous. We are satisfied that the court's charge as to custom is erroneous.

Another defect set up is that the provision of the policy in lines 86-91, both inclusive, were not complied with. That reads:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two chosen so shall first select a competent and disinterested umpire; the appraisers together shall estimate and appraise the loss then, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire, who shall make an award in writing. The parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire."

No appraisement was ever had. But we do not think that should defeat a recovery if the assured, under the circumstances of this case, on the 17th of September, did give notice of this loss. No attention was paid to that by the company, so far as appears, until the 26th day of October, when the company wrote him that the first they knew of his loss was when they received proofs of loss made on the 16th day of October. The company was mistaken; they knew on the 17th of September, but no attention was paid to it until the 26th of October, ten days after the proofs were made out. Then correspondence back and forth went on for a few days, before they wrote and answered on the 15th day of November, denying all liability. They did not suffer for want of appraisement. They paid no attention to the notice which the jury found sufficient, for there was a special finding by the jury that the notice was sufficient, and then they did not take the matter up as to whether the loss was great or little.

It is with regret that we reverse this judgment. The defect is a technical one, but it is one under the law the company may make, and for the error indicated, and for no other, the judgment is reversed and the cause remanded to the common pleas court.