HEINZE, ADMR., APPELLEE, *v*. EYE ET AL., APPELLANTS.

(No. 5029—Decided March 5, 1954.)

*Messrs. Brownfield, Ford & Douglas,* for appellee.
*Messrs. Wiles & Doucher,* for appellants.

HORNBECK, J. This is an appeal on questions of law from a judgment for the plaintiff and against the defendant, London Guarantee & Accident Company, Limited, in the sum of $5,914.40 and costs. The action was instituted by a supplemental petition filed by plaintiff-administrator against defendant insurance corporation, wherein it was averred that the plaintiff had recovered a judgment against defendant Harry W. Eye for $5,914.40 for damages for wrongful death of Frances Heinze by reason of an automobile accident which occurred on June 10, 1950, and that when the

right of action accrued the defendant was insured against loss or damage, in the operation of the automobile involved in the accident causing death of plaintiff's decedent, by the defendant company within limits of $5,000 for personal injury to or death of one person, plus certain costs and expenses of litigation. Defendant, by its answer, admitted its corporate capacity and generally denied all other averments of the petition.

The determinative question presented on this appeal is whether the defendant Harry W. Eye was on June 10, 1950, insured with the defendant company as alleged in the supplemental petition.

Although there are six assignments of error, all are encompassed in the issue just stated.

The facts essential to an appreciation of the question presented are that Harry W. Eye lived in Deer Run, West Virginia. In the spring of 1950, he had purchased a new Ford automobile and contemplated a trip. A George Sponaugle, an insurance agent living at Franklin, West Virginia, solicited insurance on the automobile. Because Eye was more than seventy years of age, Sponaugle was unable to obtain insurance for Eye in any one of the companies which he represented. In that situation, he made application to the state manager of what is known as the Assigned Risk Plan and the manager submitted the application to defendant company. This application was dated May 1950, and was signed by Eye. At the bottom of the application Sponaugle made the following certificate:

"I have read the Assigned Risk Plan for this state, have explained its provisions to the above applicant, and have included in this application all required information given to me by the applicant."

Sponaugle was not a delegated agent of the defendant company, but a producer of the application for insurance.

Under date of June 1, 1950, in response to the reference from the manager of the Assigned Risk Plan and pursuant to the application of Eye, the defendant company wrote this letter to Sponaugle, with notation of a copy to Eye:

"Subject to our usual investigation, we are prepared to issue a policy for your applicant in the amount of $5,000 $10,000 B. I. and $5,000 P. D. to cover a 1950 Ford.

"The policy will be issued effective the date following receipt of your remittance by certified check, bank cashiers check or U. S. postal order in the amount of $45.20 made payable to the London Guarantee & Accident Company. This remittance is based on a gross premium of $55.78 less a 10% commission to be retained by your office and less the $5.00 application fee. Please understand that this risk is not bound.

"If we do not hear from you within fifteen days, we shall assume that you are no longer interested in this assignment and shall close our records."

On the 8th of June, Eye went to the office of Sponaugle and paid the premium on the policy for which he had applied. On that date Sponaugle wrote to defendant company, enclosing a certified check for the sum of $45.20 for the automobile insurance of Eye. In the normal course of the mail, this letter would have reached New York City early on the morning of the 10th of June, and it would have been delivered to the company sometime during the morning of the 10th. However, the defendant company did not open its offices for business on June 10, which was Saturday. On June 10, Eye had an automobile accident in the city of Columbus, which resulted in the death of plaintiff's decedent. The accident occurred in the afternoon, about one or two o'clock. At the time, June 8th, Eye paid the insurance premium to Sponaugle, he was given this note:

"This is to advise that Harry W. Eye has insurance on his automobile with the London Guarantee & Accident Company, Ltd. of New York, 3, New York.
"The Pendleton County Insurance Agency
"By (Signed) George I. Sponaugle."

The defendant company, in the course of business, marked the letter from Sponaugle of June 8, and remittance, as received on June 12, and, pursuant to the terms of its letter of June 1 to Sponaugle and the Assigned Risk Plan, issued its policy on June 13, 1950. Soon after the accident, Sponaugle was notified and he in turn notified the defendant company which, after investigation, reported that the automobile was not covered and denied liability.

There are few disputed facts, and, as the judgment was entered by the trial judge after both parties had moved for a directed verdict, without any special findings of fact, we are required to indulge inferences most favorable to the plaintiff. In so doing, it may be said that Eye was not informed that the company would not issue the policy until one day after it had received remittance of the premium. Although it is testified that defendant company sent a copy of the letter of June 1 to Eye, he says he did not receive it until after his accident. There is nothing in the application above his signature to require the conclusion that he knew of the provisions of the Assigned Risk Plan as to the date of the issuance of the policy.

It is the contention of appellant that the Assigned Risk Plan, its letter of June 1 to Sponaugle, and the date of the policy, as issued, definitely limited its obligation as to the effective date of the policy.

Plaintiff insists that the defendant company may not be heard to say that it had not issued a policy on the Ford automobile to the plaintiff because of the provision of Section 3410.[13], West Virginia Code of

1949, which is substantially the same as Section 9586 of the Ohio General Code. The West Virginia section provides:

"Any person who shall solicit an application for insurance shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company, and not the agent of the assured."

When Sponaugle assured Eye that he had insurance on his Ford, he had reason to believe that Sponaugle was authorized to make this statement and relied upon it. Although Sponaugle was not an appointed agent of the defendant company when it received the application and issued the policy, by force of law he became its agent, at least to the extent of the solicitation and the procuration of the policy. Although he had no authority from the company to make this written statement to Eye, he had the apparent authority to do so and Eye was uninformed as to the limitation on that authority. In *Sheppard, Admr., v. Peabody Ins. Co.,* 21 W. Va., 368, paragraph 10 of the syllabus reads:

"An insurance company, which establishes a local agency, is responsible for all the acts and declarations of its agent within the scope of his apparent authority. The question in such cases is not what authority he in fact has, but what were his apparent powers, that is, what powers had assured a right to believe were given to the agent."

See, also, *General Cartage & Storage Co. v. Cox,* 74 Ohio St., 284, 78 N. E., 371, 113 Am. St. Rep., 959.

It is common knowledge, as is recognized in many of the cases, that it is the practice of insurance agents to bind their companies to the issuance of policies as of the date that the applicant makes formal or informal application to the agent.

*Machine Co. v. Insurance Co.,* 50 Ohio St., 549, 35 N.

E., 1060, 22 L. R. A., 768; *Liberty Mutual Ins. Co.* v. *Houck,* 32 C. C. (N. S.), 429, 35 C. D., 795; *Hallauer* v. *Fire Assn. of Philadelphia,* 83 W. Va., 401, 98 S. E., 441; *Hall* v. *Franklin Fire Ins. Co.,* 149 Ohio St., 216, 78 N. E. (2d), 360.

Here there is no necessity to define any term in the policy except that which fixes the date when it must be said to have been issued. The company knew of the existence of the controlling statute by which, if it issued its policy, the solicitor would become its agent. It also knew, or should have known, that unless it made certain that the applicant was informed of the limitations on the solicitor's authority he might believe that the agent could bind his company. The company could have made sure that the applicant was notified as to the extent of the authority of the solicitor.

Defendant cites and relies particularly on two federal cases and a late case from our own Supreme Court. They are *Sun Insurance Office* v. *Scott,* 284 U. S., 177, 76 L. Ed., 229, 52 S. Ct., 72, wherein it was held that our statute, Section 9586, General Code, does not define the scope of the agency but leaves it to be defined by applicable principles of common law.

The second case is *Harter* v. *American Eagle Fire Ins. Co.,* 60 F. (2d), 245, which, in the fourth and fifth paragraphs of the headnotes holds:

"Where fire insurance policy limits scope of authority of insurer's agent, written contract must control over statute defining authority (Gen. Code, Ohio, Section 9586)."

"Insured, relying upon waiver by local agent of conditions in fire policy, has burden to show agent's authority (Gen. Code, Ohio, Section 9586)."

We believe that both of these cases may be distinguished from the instant cause, in that they were deciding the rights of both of the parties upon the

terms of the policies which had been issued to them. In that situation, the insured could not be heard to say that he did not have knowledge of the limitations of the policy to which he was a party. Being put on notice by the express terms of his policy, he could not rely upon and bind the company by conflicting oral representations or conduct of its agent. In this case, in the most favorable aspect to the plaintiff it must be held that he did not know of any limitation upon the power of the agent to bind his company. Had it appeared that Sponaugle informed Eye that in no event could his policy be issued until one day after remittance of the premium was received by the company, or that Eye had received a copy of the letter of June 1 from the Company to Sponaugle, the federal cases would be applicable—although it is a query whether they would control.

The Ohio case cited is *Fay, Admr.*, v. *Swicker*, 154 Ohio St., 341, 96 N. E. (2d), 196, which is somewhat disconcerting upon the question whether Section 9586, General Code, has application to liability insurance. Judge Stewart, in the opinion, expresses some doubt on the matter, but his observation was not necessary to the judgment. Whether the status of the West Virginia statute is similar to our Section 9586, General Code, as to legislative history has not appeared by oral argument or brief.

The judgment will be affirmed.

*Judgment affirmed.*

Wiseman, P. J., and Miller, J., concur.