INSLEY, APPELLEE, *v.* MITCHELL, A MINOR, ET AL., APPELLANTS.

(No. 7123—Decided March 26, 1963.)

*Mr. Russell S. Welch,* for appellee.
*Messrs. Hamilton & Kramer* and *Mr. Charles N. Myers,* for appellants.

BRYANT, J. This is an appeal on questions of law from a judgment of the Columbus Municipal Court in favor of Warren E. Insley, plaintiff, appellee herein, and against Gwendolyn J. Mitchell, a minor, holder of a probationary motor vehicle operator's license, and Mrs. Wilma E. Mitchell, mother of Gwendolyn, who signed Gwendolyn's license application as responsible party and who was Gwendolyn's guardian for the suit, defendants, and appellants herein.

Insley filed a petition setting forth two causes of action asking for damages growing out of a collision alleged to have occurred at 10:35 p. m. on November 13, 1961. The petition alleges that Insley's car, a 1957 Ford, was lawfully parked near 796 High Street, Worthington, Ohio; that Gwendolyn, who had held an operator's license for less than two months, was the driver of a 1959 Buick automobile; that rain was falling; and that the car driven by Gwendolyn crashed into the rear and left side of Insley's Ford damaging it to such an extent it had to be towed away.

The first cause of action in the petition sets forth in detail extensive damage to the rear and left side of Insley's Ford, and alleges that its value was $1,000 before the collision and that its value was $569.07 after the collision, or a damage of $430.93 to the Ford, of which $330.93 had already been paid to Insley by an insurance company, leaving Insley's remaining damage at $100, for which judgment was asked.

The second cause of action sets forth Insley's claim for $163.74 for the loss of use of his car. It is alleged that the reasonable period required for the repair of Insley's car was thirty days.

Insley is an attorney at law, resides in Worthington, Ohio, is City Attorney for the city of Worthington, must make frequent trips to the Worthington City Hall, is attorney for a building and loan company located in the Clintonville area of Columbus, Ohio, and is required to make frequent trips to the building and loan office, and engages in the general practice of law with offices at 50 East Broad Street, Columbus, Ohio, and

is required to make frequent trips to the Franklin County Court House in Columbus, Ohio, all of which require him to use an automobile in connection with the practice of his profession as a lawyer.

The second cause of action concludes with the allegation that the reasonable value of the loss of use of Insley's car while it was being repaired was $163.74 which is the amount expended by Insley for rental of a substitute car for a period of approximately two weeks between November 22, 1961, and December 6, 1961.

Answers consisting of general denials were filed on behalf of defendants, but on the day of the trial stipulations were entered into with reference to most of the disputed matters. No question was raised concerning the first cause of action. A jury was waived and Insley was called as a witness on his own behalf. The defendants offered no evidence of any kind or character. The stipulations are as follows:

"Mr. Myers: Let the record show it has been stipulated by and between counsel for the parties that on or about the 13th day of November, 1961, the plaintiff, Warren E. Insley, was the title owner of a 1957 Ford 4-Door Sedan automobile.

"Let the record further show that the defendants admit that on that date, approximately 10:30 p. m., the defendant, Gwendolyn J. Mitchell, was operating an automobile which was in collision with the automobile of the plaintiff, Warren E. Insley.

"That the defendant was negligent in the operation of the automobile at the time and place of aforesaid.

"That as a direct and proximate result of that negligence the said 1957 Ford automobile was damaged and as a result of that damage the plaintiff, Warren E. Insley, has been damaged to the extent of one hundred dollars for the physical damage to the automobile.

"We might let the record show that in the answer of Wilma E. Mitchell, individually, it is admitted that she had signed the application for driver's license for the minor defendant, her daughter, Gwendolyn J. Mitchell. That under the statute there would be joint several liability, as the admission would apply to both defendants.

"The Court: As I understand, the negligence of the de-

fendants has been stipulated and damages to the car as prayed for; that the only issue for the court to decide in this case is the question of compensation to the plaintiff for loss of use of the automobile which was damaged. Is that the issue?

"Mr. Myers: If the court please, essentially that is correct. The only stipulation in the petition of the damage to the automobile was that Mr. Insley has been damaged to the extent of one hundred dollars. We do stipulate that. So, the only issue this court has, is the question of the loss of use claim, yes, sir.

"(Discussion of the court and counsel off the record.)

"Mr. Brennen: I will call the plaintiff, Warren Insley."

The court after hearing the testimony entered a judgment in the amount of $263.74 in favor of Insley and against the two defendants, whereupon a notice of appeal was filed, the two assigned errors reading as follows:

"The final judgment of the trial court is contrary to law.

"The final judgment of the trial court is against the manifest weight of the evidence and without sufficiency of evidence."

Defendants dispute the right of Insley to recover anything for loss of use of his car, stating in their brief:

"The sole issue before the court was the question of whether or not the plaintiff was entitled to recover as damages, compensation for the loss of use of said vehicle following the collision."

To the same effect, see other statements in the brief of defendants which read:

"As pointed out in the statement of the case, we feel that there is essentially only one question that the trial court had to determine. All other issues were covered by stipulation immediately prior to trial. The sole issue before the trial court was whether or not the plaintiff-appellee was entitled to recovery for the loss of the use of his automobile and, if so, the amount of damages that would so compensate him."

There is no longer any question in Ohio concerning the right of the owner of a motor vehicle used for commercial, business or professional purposes to recover damages for the loss of the use of such vehicle for such reasonable period of time as is necessary to make repairs. In the case of *Hayes Freight Lines, Inc.*, v. *Tarver* (1947), 148 Ohio St., 82, the second paragraph of the syllabus reads:

108

"2. Where a motor vehicle has been damaged through the negligent acts of another only to such extent that it is reasonably capable of being repaired within a reasonable period of time after its damage, the owner may recover not only the difference in value of the vehicle immediately before and immediately after the damage, but may also recover the loss of the use of the vehicle for such reasonable period of time as is necessary to make the repairs."

See, also, *Sicard* v. *Kremer*, 133 Ohio St., 291; *Cincinnati Traction Co.* v. *Feldkamp*, 19 Ohio App., 421; and *Mayer* v. *Cohn*, 12 Ohio App., 134.

As previously pointed out under the stipulation, no dispute was raised in the trial court and none is raised here with reference to the damages sought under the first cause of action.

Defendants claim, however, under authority of the *Hayes Freight Lines case, supra*, that expert testimony was required to establish (1) whether the vehicle could be repaired or not, (2) whether seven days were required to obtain repair parts in Cleveland, and (3) whether seven or eight days were reasonably required to make the repairs on Insley's car after the repair parts had arrived.

On cross-examination it was developed that Insley does not now and never has operated a garage or repair shop for the repair of automobiles. Because of this fact defendants contend that Insley lacked any qualification whatever to testify as to the time required to repair his car, that the record should be treated as though there was no testimony, and that final judgment in favor of defendants should be entered on the second cause of action.

Defendants rely upon the case of *Hayes Freight Lines, supra*. However, it should be noted that there are material differences in the facts in the *Hayes Freight Lines case*. In that case, judgment was allowed in favor of Tarver not only for the difference between the value of his truck before the accident and the amount received as salvage after the accident, but he also was allowed in addition damages for the loss of the use of truck for a period of fifty-six days.

It will be noted that the Supreme Court of Ohio decided that damages for loss of use would not be allowed when there

was total destruction of the vehicle or where damages were allowed for the total value less the amount received as salvage.

Tarver's truck never was repaired, while in the case now before us, the undisputed testimony is that Insley's car was in fact repaired and returned to him just thirty days after the date of the accident. Under the circumstances we do not believe it was necessary to have an expert testify and express an opinion whether the car could be repaired or not, when everybody concerned admits that it has been repaired.

Insley's car was four years old at the time of the accident. It was taken to the Ford agency in Worthington where a delay of approximately seven days ensued awaiting the arrival of parts needed to make the repairs. Counsel for defendants suggest that parts might have been obtained elsewhere in less time and that an expert should have been called to testify whether this was a reasonable period of time. As we see it, this is a question of fact concerning which Insley was fully capable of testifying. It is a matter of common knowledge that automobiles today are complex mechanisms consisting of many models and parts, many of which change every year. We do not think this objection is well taken.

A similar objection is made concerning Insley's testimony that a period of one week was required to make the repairs after the parts had arrived. The court below had before it the petition alleging that the Buick automobile was traveling from thirty-five to forty miles per hour when it crashed into the rear and left side of Insley's car. Also before the court below was the undisputed allegation that the damage to Insley's car was extensive, the total cost of repairs being $430.93.

No efforts were made to bring out either from Insley or anyone else such information as the detailed operations in making the repairs. Insley testified clearly that after he gave the order to the garage to make the repairs, approximately two weeks were required for the two operations, namely, ordering parts and doing the repair work. As we view it, the court below was fully warranted in arriving at the conclusions it did. Defendants in the case now before us were given ample advance warning of the claim made by Insley as to damages and loss of the use of his car. That again is another respect in which the

case now before us differs from the *Hayes Freight Lines case*, in which case there was no allegation in the cross-petition as to the claimed damage for loss of the use of the truck.

In 169 A. L. R., 1074, at page 1092, it is stated:

"In a number of cases, the amount expended for a replacement vehicle has been upheld as the measure of damages for the loss of use."

See, also, 5 American Jurisprudence, 948, Automobiles and Highway Traffic, Section 1112; and annotations in 4 A. L. R., 1356, 32 A. L. R., 714, 78 A. L. R., 910, and 169 A. L. R., 1099; and *Falter* v. *City of Toledo*, 169 Ohio St., 238.

For the reasons above stated, we conclude that the two errors assigned are not well taken and must be overruled, the judgment of the court below affirmed and the cause remanded.

*Judgment affirmed and cause remanded.*

DUFFY, P. J., concurs.

DUFFEY, J., dissenting. In my opinion there is insufficient evidence to determine the period of time reasonably necessary for the repair of the vehicle. In that respect, the plaintiff testified that the garage "took about a week to get the parts in," and that as to actual repair work, he received the car on December 13 "and I think they started to work a week or eight days perhaps before that."