DANIEL N. MILLER
*vs.*
LIBERTY INSURANCE COMPANY

Androscoggin.   Opinion, October 27, 1965.

*Carl O. Bradford,* for Plaintiff.

*Lawrence P. Mahoney,* for Defendant.

Sitting: Williamson, C. J., Webber, Tapley, Sullivan, Marden, Rudman, JJ. Sullivan, J., sat at argument, but retired before the opinion was adopted.

Marden, J. On appeal by the plaintiff to the entry of judgment for the defendant notwithstanding a jury verdict for the plaintiff.

The case arises out of the following facts:

The plaintiff and the defendant, a corporate insurance agent and broker, had business relations prior to March of 1963 in which the defendant had placed collision insurance for the plaintiff on a 1962 car for the period expiring March 8, 1963. In February of 1963 plaintiff advised Mr. Franklin P. Liberty, President and major stockholder of the defendant company, that he had a new car upon order, that he did not wish the existing insurance to be renewed and that he would notify defendant when the new car arrived. Plaintiff testified that at the same visit to defendant's office, Mr. Liberty executed an application for both collision and liability insurance on the new vehicle, which application embodied everything except the serial number, make, color and price of the new car. He testified that Mr. Liberty told him that when the new car came in it would be covered with collision and liability insurance upon the defendant's office receiving the data not then known.

At the time of this conversation plaintiff testified that he was advised upon delivery of the new car to contact either Mr. Liberty, or a Mr. Reny Marcotte, who was associated with the defendant company.

Plaintiff accepted delivery of his new car from Marcotte Chevrolet (Sales Agency) on March 28, 1963 and the purchase being financed, it was necessary for the car to be covered by collision insurance before it left the vendor's premises. Plaintiff testified, which testimony is confirmed

in some respect by other employees at the vendor's garage, that on that date he placed a telephone call for the Liberty Insurance office, a woman answered who stated that neither Mr. Liberty nor Mr. Marcotte was in, and to this woman the plaintiff related the reason for his call and gave her the data which he had been told to report on the new car.

It developed that the person answering the call, filed (dialed) for Liberty Insurance, was an operator at a phone answering service ("Anserphone") which served defendant during periods when the office phone was not attended.

Representatives of Anserphone service testified that they had recorded a phone call on March 28, 1963 from Marcotte Chevrolet for Reny Marcotte with a simple message "that said to have somebody call someone else." From information which Mr. Liberty procured from Anserphone when the claim involved in this litigation arose, Mr. Liberty told plaintiff that the message received by Anserphone for Mr. Reny Marcotte to call Marcotte Chevrolet was received by his office at 1:32 p.m. on the date in question.

Between the February 1963 conversation and March 28, 1963 Mr. Marcotte had severed his business connection with the defendant and had his own insurance accounts. Messages for Mr. Reny Marcotte, such as the reference message, were normally relayed to Mr. Reny Marcotte whose office was adjacent to defendant's.

The message recorded by Anserphone was not identified with plaintiff or data such as serial number, color and price of an automobile. From the date in February when the discussion about insurance occurred between plaintiff and Mr. Liberty to July 17, 1963, there was no communication between the parties. Plaintiff received neither written insurance policy nor demand for payment of premium.

On July 17, 1963 plaintiff was a party to a collision which damaged his vehicle and gave rise to liability claim against

him. Upon contacting Mr. Liberty of defendant company, he was informed that the car was not insured. Plaintiff, by his complaint, seeks to recover as damages for breach of defendant's alleged contract to insure $1,533.44 collision loss and $425.79 liability claim. The jury found for the plaintiff and assessed damages in the amount of $1,224.04. Upon motion properly premised, the presiding justice ordered judgment for the defendant notwithstanding this verdict. Plaintiff's appeal brings the case here.

The authority of defendant as both insurance agent and broker and the authority of Anserphone as agent of defendant is not questioned.

The content of the conversation between the plaintiff and defendant's representative in February, what was done relative to an application for insurance for the later-to-be-acquired car, the alleged arrangement for identifying data on the new car to be transmitted to defendant, the detail of the message allegedly left with Anserphone, and the extent to which the message was relayed to defendant, were subjects of controversy. They were jury questions. There was evidence to justify the jury in accepting the narration of the transaction as given by the plaintiff. They so found. This promised insurance was not provided, as a result of which plaintiff was exposed to claims which he paid and for which he now contends defendant is liable.

The defendant urges that assuming the facts as found by the jury, the defendant was not an insuring company, and the jury's factual conclusions created a legal situation wherein the plaintiff received only temporary insurance subject to defendant's, within a reasonable time, preparing, as agent, a written insurance contract with a company which it represented, or procuring, as broker, a written insurance contract from another company. It contends that the period from March 28, 1963 to July 17, 1963 so far exceeded this "reasonable time" that the plaintiff was

chargeable with notice that he had no insurance. It argues that what is a "reasonable time" from undisputed facts is a matter of law for the trial court and that the direction of judgment notwithstanding the verdict was correct.

Plaintiff replies that inasmuch as the question of reasonable time was submitted to the jury, with proper instructions, that the jury verdict should stand and that this court should reverse the judgment notwithstanding the verdict, reinstate the jury verdict, and direct entry of judgment thereon. Rule 50 M.R.C.P.

The case was impleaded, tried and submitted to the jury under the law of contracts and, more specifically, upon the issue of whether the business relationship between the parties created a parole contract for temporary insurance, and, if so, resulting questions of length of time that such temporary insurance would protect the plaintiff, and if such insurance protected for a "reasonable time," how the principle was to be applied to the facts at hand.

> "The general rule is that parol contracts of insurance are valid and enforceable, * * *." 12 Appleman, Insurance Law and Practice § 7191. So in *Hurd v. Maine Mutual Fire Insurance Company* 139 Me. 103, 106, 27 A. 2d. 918 (fire); *Elliott et al v. Standard Acc. Ins. Co. et al* 33 A. 2d. 562 (N.H. 1943 — auto liability); *Pfuehler v. General Casualty Ins. Co. et al* 300 N.W. 469 (Wis. 1941 — auto liability) and the point is not raised here.

While the record of the case indicates to us that the business relationship of the parties involved an executory contract to insure as distinct from a contract for temporary insurance, we consider the case upon the theory acceptable to counsel and court at trial. The measure of damages for violation of an executory contract to insure and the failure to supply temporary insurance *in praesenti* is the same.

"It seems to be well settled that an insurance agent or broker who undertakes to provide insurance for another, and * * * fails to do so, is liable in the amount that would have been due under the policy of insurance if it had been obtained." *Jernigan v. New Amsterdam Casualty Company et al* 367 P. 2d. 519, [14] 525 (N.M. 1961).

See also *Everett* v. *O'Leary,* 95 N.W. 901, 902 (Minn. 1903); *Brown* v. *Cooley,* 247 P. (2nd) 868, [8] 873 (N.M. 1952); *American Life Ins. Co. of Alabama* v. *Carlton,* 184 So. 171, [1, 3] 172 (Ala. 1938); and *Mansfield* v. *Federal Services Finance Corporation,* 111 A. (2nd) 322, [8-11] 325 (N.H. 1954); Annot. 29 A.L.R. (2nd) 171, § 4 at page 175 and § 29 at page 208. For "agent" and "broker" distinction see *Travelers Fire Ins. Co.* v. *Bank of Louisville, et al.,* 243 S.W. (2nd) 996, [4-6] 998 (Ky. 1951).

The defense challenges only liability. In its motions and on appeal it raises no issue on the competence of the jury to assess the damage or the amount of damages assessed. In this light we confine our consideration to the propriety of the order for judgment *n.o.v.*

Our specific question is whether, excluding consideration of the nebulous evidence on proof of the terms of the contract by which damages could be measured, but existence of which contract the jury found, there is evidence, viewed in a light most favorable to the plaintiff, to support the verdict of liability. *Hultzen* v. *Witham,* 146 Me. 118, 122, 78 A. (2nd) 342; and *Cole* v. *Lord,* 160 Me. 223, 224, 202 A. (2nd) 560.

The theory that defendant's promise, if any, was to provide temporary insurance with its concomitant principle of "reasonable time" within which a written contract is to be produced or notice given to the applicant that his request has been denied, is negatived by defendant's testimony through the lips of Mr. Liberty.

In direct examination we have:

"Q. After this accident happened, on July 17, 1963, did you have many conversations with Mr. Miller?

"A. I had probably at least half a dozen, I would say.

"Q. What was said to him in those conversations.

"A. Well, I was endeavoring to check back to find out if at any time he had called our office because, if he had called our office, I would have considered him as being covered, and then my companies would have to assume the responsibility. And this is what I was digging into when I was checking back on Anserphone and every other possibility that I could."

In cross-examination we have:

"Q. Did you receive any word from Phoenix of London that Mr. Miller was not acceptable as a risk?

"A. I did not prior to July 17th. After the 17th of July I had checked for every possibility. If there was any possible way that we could have covered him, we would have. If we had knowledge that he had called in the numbers, we would have, as I previously said, covered him. * * * "

These statements say, as clearly as can be said, that if defendant had received the identifying data on the new car, that car would have been insured. The jury found, upon credible evidence, that defendant had received the necessary information for completion of the written contract of insurance. Admittedly no written contract was issued.

The jury were justified in finding that an oral contract to insure came into existence, which contract was broken. The direction of judgment *n.o.v* was error. The verdict is reinstated and judgment thereon is directed. Rule 50 (c) M.R.C.P.

*So ordered.*