AETNA LIFE & CASUALTY CO., APPELLANT, *v.* COLUMBIA
GAS OF OHIO, APPELLEE.

[Cite as Aetna Life & Casualty Co. v. Columbia Gas
(1973), 33 Ohio App. 2d 283.]

(No. 278—Decided March 28, 1973.)

*Messrs. Wright, Harlor, Morris & Arnold, Mr. Jerry
L. McDowell, Mr. Rudolph Janata* and *Mr. F. W. Crow,
Jr.,* for appellee.
*Mr. J. B. O'Brien,* for appellant.

GRAY, J. This cause is in this court on appeal from a
judgment of the Court of Common Pleas of Gallia County
granting a directed verdict.

James P. Smith and Geraldine Smith owned a home
in the Plantz subdivision in Gallia County.

On November 4, 1968, the gas was turned off at the
meter. The Smiths moved out of the house about that date
to take up residence elsewhere.

Oscar Baird, a local realtor, was employed to sell the house. On August 10, 1969, Baird was showing the house to some prospective purchasers when he struck a match in the act of lighting a cigarette. There was an explosion which completely destroyed the house. Plaintiff, Aetna Life & Casualty Co., had insurance coverage on the house and was required to pay the sum of $13,965 under the terms of its policy. Aetna under the terms of its contract with the Smiths became subrogated to their rights. Aetna brought suit against defendant, Columbia Gas Co., for reimbursement, alleging negligence in the following particulars:

"1. Defendant, Columbia Gas Company of Ohio, failed to keep and maintain the gas service lines from the meter to the gas company's main supplier line in proper repair.

"2. That the service pipes and/or meter leaked and discharged large quantities of gas into the tank encasing the pipes servicing the house.

"3. The defendant was negligent in not turning off the gas at the curb.

"4. The defendant was negligent in not adding a malodorant to the gas.

"5. Defendant knew or in the exercise of reasonable care should have known that gas was leaking into the basement and first floor of said house."

The trial court directed a verdict in favor of defendant. It filed a journal entry wherein it made certain "observations" of the evidence. The last four of such "observations" are as follows:

"6. Oscar Baird was an agent of the owners of the property.

"7. At the time Oscar Baird attempted to light his cigarette, he was acting in the scope of his authority as an agent of the owners of the property, as he was showing the property to prospective purchasers.

"8. Previously, on two separate occasions, other prospective purchasers told Oscar Baird's real estate salesmen that the the house and yard smelled of gas.

"9. Just prior to the explosion those being shown the

property, at that time told Oscar Baird that the house had an odor. Oscar Baird said the odor was from the furniture.''

The trial court made the following conclusions of law:

''3. Where three groups of persons are shown a home and all of those groups detected an odor in the house and that odor is identified as gas by two of the groups, the mere fact that one of those groups could not identify that odor as gas is not sufficient evidence to support an allegation that the gas company failed to odorize the gas.

''4. Even if conclusion three, supra, should be found by the Court of Appeals to be an incorrect statement of the law, Oscar Baird had constructive notice that the building contained gas and it would be a negligent act for anyone with such notice to attempt to light a cigarette. Therefore, such action by the owner's agent would be contributory negligence imputed to the owner, and thus required a directed verdict on behalf of the defendant.''

The plaintiff filed his notice of appeal and assigned the following error:

''1. The Court erred in Sustaining the defendant's motion for a directed verdict.''

We believe that the assignment of error is well taken.

The theory of the trial court in granting a motion for a directed verdict was that Baird was negligent; that he was the agent of the Smiths; that the negligence of Baird carried over to the Smiths because of such relationship; that Aetna, stepping into the shoes of the Smiths by means of the subrogation covenant of the insurance contract, should have a directed verdict entered against it. Such theory is not based on the law. The law in such instances is stated in *Hopkins* v. *Clemson Agricultural College*, 221 U. S. 636, 643:

''* * * neither a state nor an individual can confer upon an agent authority to commit a tort, so as to excuse the perpetrator. In such cases the law of agency has no application,—the wrongdoer is treated as a principal * * *.''

Furthermore, the rights of the principal and agent (if such relationship existed) inter se do not measure the rights of third persons against either of them for their torts.

The Ohio Supreme Court has spoken on the matter of

the introduction of a malodorant into natural gas sold in *Suiter* v. *Ohio Valley Gas Co.*, 10 Ohio St. 2d 77, wherein it cited with approval the case of *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo*, 126 Ohio St. 140. In the fourth paragraph of the syllabus, it is said:

"By reason of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care, to prevent the escape of gas from its pipes, commensurate with the danger, and, if it fails to exercise this degree of care and injury results therefrom, the company is liable, provided the person suffering the injury either in person or in property is free from contributory negligence; and whether, under all the circumstances of a case, a defendant gas company has used such degree of care is a question to be submitted to the jury, under proper instructions, if there be evidence in the record tending to show every essential element necessary to create a liability or evidence of facts from which a reasonable inference might be drawn to support such elements necessary to create such liability."

Upon the record, we are of the opinion that this specification of negligence should have been submitted to the jury.

This cause is remanded to the court below for further proceedings according to law.

*Judgment reversed and cause remanded.*

STEPHENSON, P. J., concurs in judgment only.
ABELE, J., concurs.

STEPHENSON, J., concurring in judgment. I concur in the judgment of reversal in this appeal. I agree that the directing of the verdict by the trial court upon the theory that notice to the real estate agent, who had the house for sale, was notice to the owners and that the agent's attempt to light a cigarette, with the resulting gas explosion, was contributory negligence chargeable to the owners barring

recovery by the plaintiff, is not well taken. The reason is that the doctrine of imputed knowledge applies only to acts within the scope of the agency. From the evidence, the duty of such agent was to secure a buyer for the house. Nothing appears in the evidence that it was the agent's duty to inspect the house for gas leaks. No duty of inspection being incident to the sale, the owners were not bound by the agent's knowledge. *Fay* v. *Swicker*, 154 Ohio St. 341, 2 Ohio Jurisprudence 2d 237, Agency, Section 167.

I am persuaded by defendant's assertion that the evidence was insufficient to present a jury question upon the issue that the gas was not odorized. In my view, reasonable minds could not differ on the evidence in this respect, and the trial court correctly withdrew this issue from jury consideration.

However, I do view the evidence as presenting a jury question of negligence with respect to the manner in which the gas was turned off. As a general rule, it would appear settled that the duty of inspecting and maintaining a service line which is owned by a property owner and being used for transmission of gas for use by the property owner and located upon a property owner's premises is upon the property owner and that, in the absence of knowledge, express or implied, that gas is leaking from the service line, no duty of inspection exists to make the gas company liable for a leak in the service line. *Hamden Lodge No. 517* v. *The Ohio Fuel Gas Co.*, 127 Ohio State 469; *The Northwestern Ohio Natural Gas Co.* v. *The First Congregational Church of Toledo, Ohio*, 126 Ohio St. 140, 26 Ohio Jurisprudence 2d 129, Gas Companies, Section 43.

The evidence discloses a request by the owners that gas service to the premises be discontinued. The employees of the company cut the gas off at the meter adjacent to the house, but did not cut the gas off at the curb stop because it was not visible by reason of being covered with dirt. The owners had no knowledge as to how the gas was cut off. The gas was allowed to remain in the service line under pressure for approximately nine months thereafter. It further appears gas leaked from a coupling in such line. The

gas company made periodic inspections of the meter thereafter to make sure no gas was being used. The evidence would support a finding by a jury that the company knew the premises were unoccupied for such nine month period. The evidence as to who covered the curb stop was disputed. It appears to be conceded that if the gas had been cut off at the curb stop, no explosion would have occurred.

Under these circumstances, the issue is whether reasonable minds could reach different conclusions as to whether a reasonable prudent person, in the exercise of ordinary care commensurate with the danger involved, would have foreseen that if a leak developed in the service line where there would be no person on the premises to detect it, it might accumulate and be set off by a person subsequently entering the premises. In determining whether an unreasonable risk of danger should have been foreseen, the practicability of the things that could have been done to avoid the danger is a relevant consideration. *Thompson* v. *Ohio Fuel Gas Co.*, 9 Ohio St. 2d 116. The location of the curb stop and the turning off of the gas was not impractical and could have been done easily and would have been done at the end of twelve months after cutoff.

It is my conclusion that reasonable minds could differ in this respect and the issue should have been submitted to the jury. See annotation 13 A. L. R. 2d 1396 at 1398 (Section 3), where the authorities upon this question are collected.