STUART, APPELLEE, *v.* NATIONAL INDEMNITY CO., APPELLEE; WILSON & CO. ET AL., APPELLANTS.

(No. 43853—Decided March 18, 1982.)

*Mr. Dennis Seaman,* for plaintiff-appellee.

*Mr. Steve J. Handlovics,* for defendant-appellee.

*Mr. Morris I. Goldsmith,* for defendants-appellants.

MARKUS, P.J. Defendants-appellants are a Cleveland insurance sales agency and its president who misrepresented to the agency's customer that insurance coverage had been effected. They appeal from that customer's judgment for an uninsured loss, arguing that they should not be liable for the customer's loss, that the intended insurers should also be liable, that they should be indemnified by the intended insurers, that damages were improperly determined, and that they should recover a premium refund from one of the insurers.

While we agree that the customer's damages were incorrectly adjudicated, we find no merit in the other errors claimed by defendants-appellants. Therefore, we modify the amount of damages and affirm the judgment of the trial court.

Uncontradicted evidence in the nonjury trial of this case showed that the customer's wife telephoned the defendant sales agency to inquire about purchasing insurance for customer's truck and later made an appointment to complete arrangements. Between the call and the scheduled appointment, the sales agency's president contacted an Akron-based general agent of the intended insurers for quotations of applicable premium charges. That general agent confirmed its oral quotations with a written memo, which was received by the defendant sales agency before the customer's appointment, and which expressly stated, "We must have app[lica-tion]s back in our office before we can bind."

As scheduled, customer and his wife went to the defendant sales agency and met with the defendant-president on Saturday, July 1. Customer signed insurance application and premium financing forms for liability, collision, and comprehensive (fire and theft) coverages; and he gave defendants a check for the premium down payment requested by defendants. The collision and comprehensive application form showed a policy period from July 1, 1978, to July 1, 1979. The defendant-president then gave the customer two copies of a printed insurance binder form signed by defendant-president as "Authorized Representative."

On that binder form, the defendant sales agency had typewritten data in appropriate blanks which designated its own name and address as "Agency"; customer's name and address as the "Insured"; National Indemnity Company as the insuring "Company"; the model and serial number of customer's truck; specified limits of insurance coverage for liability, collision, comprehensive, and uninsured motorist protection; and the binder's effective dates as noon on July 1, 1978, to 12:01 a.m. on July 30, 1978.

The printed language on the binder form was headed "INSURANCE BINDER," followed by this statement:

"THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT

TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM."

The printed "CONDITIONS" on the back of the binder form said:

"This Company binds the kind(s) of insurance stipulated on the reverse side. This insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company.

"This binder may be cancelled by the Insured by surrender of this binder or by written notice to the company stating when cancellations will be effective. This binder may be cancelled by the Company by notice to the Insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company."

Despite the unequivocal terms of the binder form, no insurer was bound by its issuance because the defendant sales agency and its president had no authority to bind coverage for these insurers. The intended insurers, their general agent, and the defendant-president himself, all confirm these defendants' lack of authority. Defendants had never bound coverage for these intended insurers. Indeed, the insurer listed on the written binder (National Indemnity Company) does not sell insurance for collision and comprehensive coverage. Instead, the defendant-president forwarded the completed application to the Akron general agent who did have authority to bind coverage for National Indemnity Company on liability insurance and for Lloyd's of London on the collision and comprehensive insurance.

Defendant-president testified that the binder form was prepared and delivered by mistake, since he had intended to give the customer a "certificate of insurance" which would satisfy his employer's requirement that its owner-drivers carry liability insurance. However, he orally assured the customer and the customer's wife that the truck was fully insured before they left his office on July 1.

On July 3, the plaintiff-customer operated his truck in the firm belief that it was fully insured pursuant to the written binder and the oral representations by defendants. Indeed, he needed a written certification of insurance coverage to obtain the trucking business from the carrier whose material he hauled. At the end of that working day, his truck caught fire and sustained substantial damage. The customer's wife notified the defendant sales agency on July 5 of the fire loss. That loss would have been covered under the "comprehensive" insurance supposedly bound by defendants effective July 1.

However, the insurance applications forwarded by defendants were not received by the Akron general agent for the intended insurers until Wednesday, July 5. The four-day delay in transmittal may have resulted from a tardy mail delivery, but the general agent's offices were closed from Friday, June 30, through Tuesday, July 4, for an extended holiday weekend. On July 5, the general agent accepted the applications and bound coverage effective that date.[1] The general agent promptly mailed a certificate of insurance to the customer, showing all the requested coverage from 12:01 a.m. on July 5, 1978, to 12:01 a.m. on July 5, 1979.

The general agent also sent a form to the defendant sales agency confirming that the requested coverages were bound effective July 5, and advising that the formal policies could not be issued until prescribed affidavits were supplied. That form was mailed by the general agent on July 5 and received by the defendant sales

---

[1] In accepting the application, the general agent's employee changed the date shown from July 1 to July 5, in accordance with its usual practice.

agency on July 7. When these various matters were accomplished by the general agent on July 5, neither the general agent nor the insurance companies had any knowledge of the fire on July 3. Ultimately, Lloyd's issued a policy for fire, theft, comprehensive, and collision coverages, effective July 5, 1978.

On August 3, 1978, a property damage appraiser employed by the general agent examined the vehicle. He estimated repair costs at $6,489.64, which exceeded his valuation of the truck if repaired at $4,000. Since the cost of repair was greater than the value of the vehicle, he considered the fire damage caused a total loss. At the time of his damage appraisal he understood the fire had occurred on July 5 when the policy applied.

Subsequently, the insurers denied coverage and liability for the fire loss. The customer then brought this action against the supposed insurers, their general agent, the defendant sales agency, and the defendant-president of that agency. Defendant sales agency and its president cross-claimed against Lloyd's and its Akron general agent for indemnity against the customer's claim, and against National Indemnity for return of a $205 partial premium payment.

In its judgment entry with concurrent findings of fact and conclusions of law, the trial court granted judgment for the plaintiff-customer for $12,108.50 against the defendant sales agency and its president, dismissed those defendants' cross-claims against the insurance companies and their general agent, and disposed of certain other claims which are not involved in this appeal. The sole appeal before this court is by the defendant sales agency and its president.[2]

## I

The defendant sales agency and its president contend they should not be liable for their customer's loss, in their second, sixth, seventh, and tenth assignments of error.[3] In effect, they claim the plaintiff-customer failed to show they breached any duty, because they justifiably believed the general agent would receive the applications and provide coverage on July 3, which was the date of the fire loss.

An insurance agency that undertakes to acquire coverage for a customer and fails to do so by fault or neglect is liable to the customer for any resulting damage. *Conley* v. *Postle* (1961), 88 Ohio Law Abs. 148; *Ward* v. *Moore* (1930), 9 Ohio Law Abs. 439; Annotation, 64 A.L.R. 3d 398, at 410. Further, such an agency has a duty to exercise reasonable care in advising its customer about the terms of requested coverage. *Roberts* v. *State Farm* (Jan. 7, 1982), Cuyahoga App. No. 43388, unreported.

In the present case, the trial court made factual findings supported by the evidence that the defendant sales agency and its president had no authority from the insurers to bind coverage, that they knew they did not have such authority, that plaintiff-customer believed he did have full coverage, and that the agency's president intentionally misrepresented the truck's coverage with knowledge that his representation was false. Under those circumstances, defendants' liability derives from intentional misrepresentation, rather than mere negligence.

Defendants cannot reasonably rely on

---

[2] Defendants have moved to strike references to certain depositions from the appellate brief filed by the insurance companies and their general agent, on the ground that those depositions were never offered or received in evidence. That motion is granted; those depositions and references to them have not been considered in reaching this court's decision.

[3] The ten assignments of error asserted by defendants-appellants are set forth in full in the Appendix to this opinion.

their supposed expectation that the general agent would receive the application by mail and act on it immediately, even if there were such an established practice, since defendants did not so advise their customer. Instead, defendants deliberately purported to bind coverage immediately, assuring their customer there was *no* delay in providing the requested full coverage. Manifestly, defendants knew that there could be no coverage for any loss suffered by the customer's truck on the Saturday he was in defendants' office or on that Sunday, since no mail could possibly reach the general agent in that interval. Defendants necessarily took the risk of any loss which would be covered until the application reached the general agent, whenever that might be.

With the intervening Sunday and national holiday, it would not have been surprising that mail delivery was slightly delayed or business establishments remained closed over the Monday surrounded by the weekend and the holiday. Defendants were responsible to their customer for any supposedly covered loss from the moment they delivered the unauthorized binder until coverage was actually obtained.

Defendants contend the trial court wrongly found the false binder was intentionally issued by defendants, but there was abundant evidence from which that finding could be made. As the trier of fact the trial judge had the best opportunity to evaluate the credibility of witnesses and to make appropriate findings. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]. We cannot say this finding was unsupported or against the manifest weight of the evidence.

Defendants' contention that the agency's president was not individually liable is equally inappropriate. Undisputed evidence establishes that all actions by the defendant sales agency regarding this customer were conducted by its president. The trial court granted judgment for his tortious misrepresentation.

An agent acting for an openly identified principal is ordinarily not liable in a contract action for the principal's breach of contract, because the claimant has presumably relied solely on the known principal's credit and performance. *Fifty West Broad, Inc.* v. *Poulson* (1944), 75 Ohio App. 194 [30 O.O. 517]; *Givner* v. *U.S. Hoffman Machinery Corp.* (1935), 49 Ohio App. 410 [3 O.O. 282]. However, both the agent and the disclosed principal are liable for tortious misconduct by the agent within the scope of his employment. *Saunders* v. *Allstate Ins. Co.* (1958), 168 Ohio St. 55 [5 O.O.2d 303]; *Aetna Life & Casualty Co.* v. *Columbia Gas* (1973), 33 Ohio App. 2d 283 [62 O.O.2d 424]. Where the tortious misconduct consists of negligent or intentional misrepresentation, the tort victim still has the right to recover from the individual tortfeasor, as well as that individual's employer, for statements made within the scope of employment. *Citizens Gas & Electric* v. *Black* (1916), 95 Ohio St. 42; *Trust Co.* v. *Floyd* (1890), 47 Ohio St. 525.

The trial court's finding that the defendant sales agency and its president were liable to their customer is supported by the law and the evidence, so defendants' motions for judgment were properly denied. Civ. R. 41 (B)(2); Civ. R. 50 (A)(4).

The second, sixth, seventh, and tenth assignments of error are overruled.

## II

In their first and ninth assignments of error, the defendant sales agency and its president claim the intended insurers and their general agent should have been liable to the customer for the loss, so those parties should indemnify the defendant sales agency against the customer's claim. In substance, defendants-appellants contend that R.C. 3929.27 gave them power to bind the insurers regardless of the insurers' refusal to give

them such authority, and that insurance contracts were effective when completed applications were deposited in the mails regardless of their delivery date.

Under Ohio insurance statutes, any person soliciting insurance sales is an agent for the resulting insurer rather than the insured customer. R.C. 3929.27 provides:

"A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."

This statute has its counterpart in numerous other jurisdictions. It identifies the party chargeable with any responsibility for knowledge or acts of the soliciting agent, to the extent that either party is responsible for that agent, but it does not determine the scope of the agent's authority or employment.

Ohio decisions have generally applied R.C. 3929.27 to hold the ultimate insurer responsible for knowledge gained by the soliciting-agent when an application was sought and obtained. *Saunders* v. *Allstate Ins. Co., supra; Ins. Co.* v. *Williams* (1883), 39 Ohio St. 584; *Thomas* v. *Fields* (1964), 94 Ohio Law Abs. 48, 52 [29 O.O.2d 286]; *American Liability & Surety Co.* v. *Hornick* (1934), 17 Ohio Law Abs. 81. The ultimate insurer may not be responsible for knowledge the soliciting agent later acquires about claims against the policy. See *Pateras* v. *Standard Accident Ins. Co.* (1929), 37 Ohio App. 383. Unless the ultimate insurer advises the customer otherwise, the soliciting agent may well have implied or apparent authority to accept premium payments on behalf of the insurer. *Machine Co.* v. *Ins. Co.* (1893), 50 Ohio St. 549; *State Life Ins. Co.* v. *Ritzi* (1931), 9 Ohio Law Abs. 612.

However, absent actual or apparent authority, the soliciting agent has no power to act for the insurer to create an insurance contract, or to establish or modify its terms, notwithstanding the provisions in R.C. 3929.27. *Sun Ins. Office* v. *Scott* (1931), 284 U.S. 177; *Gregg* v. *John Hancock Mutual Life Ins. Co.* (1975), 43 Ohio St. 2d 119 [72 O.O.2d 66]; *Royal Ins. Co.* v. *Silberman* (1904), 24 Ohio C.C. (N.S.) 511.

Presumably, any agent with actual authority to issue policies has power to bind coverage temporarily. Where the insurer clothes an agent with sufficient indicia of that authority, the insurer's own affirmative acts may cause customers to rely on the agent's apparent authority to bind the insurer. Thus, defendants-appellants cite *Heinze* v. *Eye* (1954), 97 Ohio App. 451 [56 O.O. 361], a Franklin County decision holding that a soliciting agent had apparent authority to act for the insurer in binding coverage.

By contrast, the trial court in this case expressly found the defendant sales agency had no actual or apparent authority to bind coverage. Consistent with the evidence at trial, the court ruled there had been no showing the insurer gave the customer any reason to believe the sales agency had authority to act on its behalf. Indeed, both the customer and his wife testified they believed the defendant sales agency was the insurance company, and they had no knowledge about the intended insurers when they left the agency's offices on July 1.

The defendant sales agency and its president also contend the general agent offered coverage by quoting rates and mailing an application form, so the policy coverage was accepted and effective when the completed application was deposited in the mails addressed back to the general agent. They argue that an offer communicated by mail is accepted when its approval is deposited in the mail, regardless of its ultimate delivery date. See *Burton* v. *United States* (1906), 202 U.S. 344; *Dickey* v. *Hurd* (C.A. 1, 1929), 33 F.2d 415, certiorari denied (1929), 280 U.S. 601.

While that legal proposition is

generally sound, it has no relation to an offer for which acceptance is expressly effective only when communicated in some other manner or only when it is physically received. *Elkhorn-Hazard Coal Co.* v. *Kentucky River Coal Corp.* (C.A. 6, 1926), 20 F. 2d 67; *Bingham* v. *Shoup* (1936), 22 Ohio Law Abs. 429.

We cannot agree that transmittal of an application form and corresponding rates is an offer for an insurance contract, since the insurer's authorized agent might well reject the application when the information it contains has been reviewed. A contrary conclusion makes the application information meaningless. However, even if transmittal of the applications was an offer subject to an unqualified acceptance, the terms of this transmittal expressly stated that no binder could occur until the applications were physically "back in our [general agent's] office."

Therefore, no insurance contract was formed by reason of apparent authority or the acceptance of an offer to make such a contract. Consequently, the trial court properly dismissed the customer's claims against the intended insurers and their general agent. Accordingly, there could be no duty by those other parties to indemnify the defendant sales agency or its president. Indeed, if the insurers had been held liable to the customer, on the ground that the sales agency had apparent authority without actual authority, the insurers might well have been entitled to indemnification from the sales agency for exceeding its actual authority. Restatement of Agency 2d (1958), Section 401.

The first and ninth assignments of error are overruled.

### III

In their third, fourth, and fifth assignments of error, the defendants-appellants challenge four. aspects of the damage findings by the trial court: valuation of vehicle damage, valuation of loss of use, propriety of punitive damages, and propriety of attorney fees as damages.

Ordinarily, the measure of damages for tortious misrepresentation that insurance has been provided is the loss sustained by the failure to provide that coverage. In other words, the defendant sales agency and its president are liable for the amount the insurer would have owed under the terms of the supposed insurance contract. See Appleman, Insurance Law & Practice (1981 Ed.), Section 8841; *Erika Trading Corp.* v. *Nathan Butwin Co.* (1979), 100 Misc. 2d 830, 420 N.Y.Supp. 2d 87; *Ursini* v. *Goldman* (1934), 118 Conn. 554, 173 A. 789; *Case* v. *Ewbanks, E. & Co.* (1927), 194 N.C. 775, 140 S.E. 709; *Derby* v. *Blankenship* (1950), 217 Ark. 272, 230 S.W. 2d 481; *Miller* v. *Liberty Ins. Co.* (1965), 161 Me. 438, 213 A. 2d 831; *Wheaton National Bank* v. *Dudek* (1978), 59 Ill. App. 3d 970, 376 N.E. 2d 633.

In some jurisdictions, punitive damages are also allowed when fraud or deceit are involved. *Jack Criswell Lincoln Mercury, Inc.* v. *Tsichlis* (Tex. Civ. App. 1977), 549 S.W. 2d 255; *Patterson* v. *Castellaw* (1969), 119 Ga. App. 712, 168 S.E. 2d 838. Still others would allow recovery beyond misrepresented insurance terms for additional foreseeable consequential damages from the failure to provide coverage, such as profits lost by unnecessary delay in obtaining reimbursement for the supposedly insured loss. *E.g., Joseph Forest Products, Inc.* v. *Pratt* (1977), 278 Ore. 477, 564 P. 2d 1027.

Counsel have not cited any directly applicable Ohio authority, and we have been unable to find any such Ohio decisions. However, this is basically a tort action for the recovery of damages reasonably foreseeable from the breach of a duty to provide insurance as represented, so we believe Ohio law would follow the majority rule in allowing damages equivalent to the contract that was not provided. Although the trial court did find that these defendants misrepresented intentionally and with knowledge their representation was false, we do not

understand that punitive damages would be proper.

Under Ohio law punitive damages are recoverable for fraud only if actual malice is shown or is inferable from intentional, reckless, wanton, willful and gross acts. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, at 471 [21 O.O.3d 285]; *Davis* v. *Tunison* (1959), 168 Ohio St. 471 [7 O.O.2d 296]; *Smithhisler* v. *Dutter* (1952), 157 Ohio St. 454 [47 O.O. 334]. Intentionally made false representations are not sufficient to justify punitive damages unless they are relatively egregious. *Logsden* v. *Graham Ford* (1978), 54 Ohio St. 2d 336 [8 O.O.3d 349]; *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 184 [71 O.O.2d 174].

Attorney fees are generally not proper damages, absent statutory authority or recovery for punitive damages. *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177 [75 O.O.2d 224]; *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184 [75 O.O.2d 228]; *Royal American Corp.* v. *Euclid* (Aug. 15, 1974), Cuyahoga App. No. 33432, unreported; *Miller* v. *International Mercantile Corp.* (Feb. 28, 1980), Cuyahoga App. No. 40339, unreported. No statute authorizes attorney fees as damages here, and no other special circumstances for their allowance has been demonstrated. Therefore, that item of damages must be disallowed.

Loss of use of the vehicle is generally not recoverable under the terms of fire insurance for motor vehicles. Since there was no evidence that the intended policy would have reimbursed for loss of use, there can be no recovery for that item of damages here. Similarly, there would be no recovery for the $50 towing expense included in the trial court's calculation unless the policy provided that coverage.

Further, the trial court's calculations for damages from loss of use are speculative and unsupported by the record here. Damages for loss of use are recoverable for the interval necessary to accomplish repairs in an action for tor-

tious damage to a motor vehicle, rather than tortious failure to provide insurance for such damage, if the repair costs are less than the vehicle's value. *Hayes Freight Lines, Inc.* v. *Tarver* (1917), 148 Ohio St. 82; *Insley* v. *Mitchell* (1963), 118 Ohio App. 104 [24 O.O.2d 430].

In this case, the vehicle was a "total loss" from an insurance viewpoint, since the cost of repair exceeded the vehicle's value when repaired. If damages for loss of use were allowed in that situation, the damaged party would not mitigate damages but would aggravate them by repairing the vehicle. Further, there was no evidence from which the trial court could determine the interval for which loss of use damages were justified, since the vehicle was not repaired.

Apparently, the trial court allowed these damages for sixty-three days at the rate of $76 per day, the customer's revenue from operating the truck one day before the fire. That interval seemingly represents the non-holiday weekdays for three months following the fire, which relates to the customer's testimony that he did not learn coverage was denied for two or three months. That evidence is not sufficient to permit recovery for loss of use.

Finally, the trial court properly allowed the value of the "total loss" supported by the appraiser's testimony, but neglected to reduce that amount by the deductible provision of the insurance described in the application and the original binder.

Applying all these principles, we modify the damages for the judgment against the defendant sales agency and its president, pursuant to our authority under App. R. 12 (C): damage to truck, less deductible ($3,750), plus unreturned premium ($269.50) — Total ($4,019.50).

The third, fourth, and fifth assignments of error are sustained in part.

## IV

Finally, in their eighth assignment of

error, defendants-appellants argue that the trial court erroneously failed to hear evidence or award them judgment against one insurer for an unearned and unreimbursed premium payment of $205.

The record contains no evidence to support that claim, and no proffer of any evidence rejected by the court on that subject. Indeed, the record reflects that the court specifically inquired whether there would be evidence on that claim and was told that the parties were attempting to resolve it by settlement. Absent any evidence, the trial court properly dismissed that claim after all the evidence had been concluded. Thus, the judgment of the trial court is affirmed as to all liability issues and the case is remanded for entry of judgment to conform with the damages prescribed by this opinion.

*Judgment affirmed as modified.*

JACKSON and NAHRA, JJ., concur.

## APPENDIX

### "ASSIGNMENTS OF ERROR

"(1) The court erred in granting the motion for judgment made by the Defendants, J. Gordon Gaines Associates, Inc., Lloyds of London, and the Substitute-Defendant, Frederick J. Simmons at the close of the Plaintiff's case, in that:

"(A) The Plaintiff's acceptance of the written quotation and offer — mailed by the Defendant, J. Gordon Gaines Associates, Inc. as agent for the Defendant, Lloyds of London, on June 27, 1978 — by executing the applications and posting such applications addressed to the office of Defendant, J. Gordon Gaines Associates, Inc., on July 1, 1978, constituted the acceptance of such policy by Defendant, J. Gordon Gaines Associates, Inc., as agent for Defendant, Lloyds of London, and the policy became effective as of July 1, 1978.

"(B) That pursuant to § 3929.27 of the Ohio Revised Code, the Defendant, Wilson & Co., was the soliciting agent for the insurance and became the agent of the defendant insurance company when he procured the applications, and the insurance was subsequently issued by the Defendant, Lloyds of London.

"(2) The court erred in rendering judgment against the Defendant, Wilson & Co., and the Defendant, William E. Wilson, in that said Defendants were not guilty of any negligence or violation of any contractual relationship, and had performed all duties faithfully and diligently, as required of an insurance broker.

"(3) The court erred in granting a judgment of $1.00 for punitive damages and in the award of attorney fees against the Defendant, Wilson & Co., and the Defendant, William E. Wilson, in that there was no evidence of negligence permitting the award of compensatory damages, and there was no evidence of any willful, wanton, malicious acts entitling Plaintiff to punitive damages.

"(4) The court erred in awarding compensatory damages to the Plaintiff in that there was no evidence as to the value of the truck prior to the occurrence, there was no evidence as to the value of the truck after the occurrence, and in that the court speculated in determining damages.

"(5) The court erred in granting judgment for attorney fees in that there was no testimony as to the nature of services rendered, or the reasonable value of such attorney fees.

"(6) The court erred in finding that the Defendant, Wilson & Co., issued a certificate of binder, intending to and binding the property damage policy issued by the Defendant, Lloyds of London.

"(7) The court erred in its finding that the Defendant, William E. Wilson, as an employee of Wilson & Co., was liable to the Plaintiff.

"(8) The court erred in failing to hear evidence on and make a judgment as to the claim of the Defendant, Wilson &

Co., against the Defendant, National Indemnity Company for refund of premium.

"(9) The court erred in dismissing the Cross-Claim of the Defendant, Wilson & Co., against the Defendant, Lloyds of London, and the Defendant, J. Gordon Gaines Associates, Inc., wherein said Defendant, Wilson & Co., sought an indemnification payment against said Defendant, Lloyds of London, and Defendant, J. Gordon Gaines Associates, Inc.

"(10) The court erred in denying motions made by the Defendant, Wilson & Co., and Defendant, William E. Wilson, for judgment at the close of Plaintiff's case, and at the close of the Defendants' case."