KOSLEN et v
LIPPINCOTT DISTRIBUTING CO
LOMBARDO v
LIPPINCOTT DISTRIBUTING CO
LOMBARDO v FAYETTE CANNING CO

Ohio Appeals, 8th Dist, Cuyahoga Co

Nos 15406, 15417 & 15418

Decided Aug 7, 1936

D. J. Lombardo, Cleveland, and Krieger & Eisenberg, Cleveland, for plaintiffs.

Reasner & Wieber, Cleveland, for defendants.

BARNES, PJ, HORNBECK and BODEY, JJ, (2nd Dist) sitting by designation.

**OPINION**

By BARNES, PJ.

The above entitled three cases have been consolidated for the purpose of the appeal in this court.

The appeals are on questions of law and having been made since January 1, 1936, are controlled by the new procedure act. The cases originated in the Municipal Court, Cleveland, Ohio, Cuyahoga County, and there were submitted upon an agreed statement of facts, accompanied by identified exhibits.

The salient facts are admitted to be identical in each of the three cases. The following brief statement will render understandable the nature of the controversy.

On the 31st day of October, 1935, a man by the name of M. K. Berk, went to the office of The Lippincott Distributing Company of Cincinnati, Ohio, wholesale grocers, and contracted to purchase a very large order of canned goods and preserves, the same to be delivered to the Cuyahoga Grocery Company of Akron, Ohio, with which latter company Berk represented himself to be connected.

At the time the order was taken it was found that neither Berk nor the Cuyahoga Grocery Company had any financial rating. As a result the goods were shipped C.O.D., by truck through the Rex Forwarding & Freight Company. The bill of lading together with the invoice was given to the truck man with information that said goods were being sent C.O.D. The bill of lading contained the following notation which was descriptive of the articles shipped, the weight, the rate, and the amount of the C.O.D. charge: "507 cases of groceries. Gross weight, 18948 pounds. Rate 25. C. O.D. $1119.46." The shipping directions were via No. 22 and 23 Slawson, and the shipping charge $47.37. There was also endorsed on this bill of lading: "Make check for C.O.D. payable to Lippincott Company. Make check for freight payable to Rex Forwarding & Freight, Inc. Please give both checks to driver on delivery."

The shipment arrived in Akron Saturday afternoon and was delivered to Berk or The

Cuyahoga Grocery Company at 194 East Cuyahoga Falls Avenue. Address given by Berk was 194 East Cuyahoga Street, Akron. After the delivery of the goods was made to Berk or The Cuyahoga Grocery Company two checks were made out by Berk for the proper amounts. No. 10 was made out to the Lippincott Distributing Company for the sum of $1119.46 and was signed "Cuyahoga Grocery Company by M. K. Berk." The check was drawn on The First Central Trust Company of Akron, Ohio. The second check, issued against the same bank, was similarly executed and in favor of Rex Forwarding & Freight, Inc., for the sum of $47.37. Berk receipted the bill of lading as having received the merchandise in good condition.

At the time the checks were received, the bank had closed for the afternoon. The driver of the truck delivered the two checks to his superior and he in turn delivered the one check to The Lippincott Distributing Company. It developed that Berk in making out the checks had used vanishing ink and on Monday following the delivery of the goods the writing had disappeared.

A representative of The Lippincott Distributing Company immediately went to Akron for the purpose of procuring a good check but on his arrival found that everything had been moved out of the store at 194 East Cuyahoga Falls Avenue, Akron, Ohio, and that Berk has disappeared. The police were immediately notified. Something like a week or ten days later a representative of The Lippincott Distributing Company found the goods in two different locations, a portion with Rose Koelen and others and the remainder with Joseph G. Lombardo.

On the same day and under the same circumstances, The Fayette Canning Company of Washington C. H., Ohio, sold to this same M. K. Berk or The Cuyahoga Grocery Company, of Akron, Ohio, a large bill of groceries. The remaining details of shipment, delivery and payment are identical in all particulars with the above. These goods were sold by Berk to Joseph G. Lombardo at the same time as he made the sale of the merchandise received from The Lippincott Distributing Company.

Joseph G. Lombardo, of Cleveland, was contacted by 'phone through a mutual acquaintance, the latter vouching for Berk. Berk then made a personal call on Lombardo and sold him the major portion of the shipments received from The Lippincott Company and The Fayette Company. The deal was consummated on a 15% discount on the invoice price to Berk. The invoices from the Lippincott and Fayette Companies were exhibited and disclosed on their face the same were marked paid. The reason assigned for the sale at the agreed discount was that he, Berk, needed the cash immediately.

The sale to Mrs. Koslen was made through a third person representing himself to be a cousin of Berk. The other details were substantially the same as in the sale to Lombardo. The only possible evidence of bad faith on the part of Lombardo and Mrs. Koslen was the amount of the discount.

Both The Lippincott Distributing Company of Cincinnati, Ohio, and The Fayette Canning Company of Washington C. H., Ohio, commenced their actions in the Municipal Court of Cleveland, Cuyahoga County, Ohio, and replevined the goods from Joseph G. Lombardo and Rose Koslen. These replevin actions were in three separate suits. A jury was waived and the cases tried to the court on an agreed statement of facts. The trial court found in favor of the plaintiff.

This was on the theory that Berk's action was fraudulent and the title was not passed.

We have carefully examined the record, together with briefs of counsel. The case being submitted on an agreed statement, there can be no factual controversy. On the facts stated we think the law is so well determined that we unhesitatingly find ourselves compelled to reverse the trial court. There is not the shadow of doubt that Berk's action was fraudulent and if the controversy was entirely between the plaintiffs and Berk the sale would be set aside and full relief granted. However, we have in the instant cases the rights of third parties claiming to be innocent purchasers for value.

The law is well settled that where one of two innocent persons must suffer by the fraud of another the loss should fall upon the one who put it in the power of such third person to perpetrate the fraud, especially if there has been any carelessness on his part. A pertinent inquiry in the instant cases is as to whether or not the transaction with Berk constituted a void or voidable sale. If a sale is absolutely void no title passes and the seller may pursue the property wherever found even though in the hands of innocent purchasers for value. If the sale is merely voidable the fraudulent purchaser by sale to a bona fide vendee without notice will pass good title. An instance of a sale absolutely void is where

the vendee does not intend to pass the title; or where an imposter representing another procures the possession intended for the other. In such an instance the seller intends to part with the title but there is not present the intent to part with the title to the imposter.

Where there is present an intention on the part of the seller to pass title to the person given possession a fraudulent contract and misrepresentation will not defeat title to the property in the hands of an innocent purchaser for value. Such a contract is defined to be voidable.

Applying these principles to the instant case, the agreed statement of facts shows a voidable contract of sale.

Berk, or The Cuyahoga Grocery Company, was placed in possession of the merchandice which was the subject of the replevin action. The circumstances attending the giving of possession indicated an intention to pass title. The Rex Forwarding & Freight, Inc., was the agent of The Lippincott Distributing Company. The driver of the truck making the delivery was instructed to procure checks. This he did. The fact that the checks were made out with vanishing ink would have no different effect than if checks had been given with no money to take them up. The agreed statement of facts discloses that there was only $100.00 balance in the bank at the time. The Lippincott Distributing Company could have protected itself by demanding cash or a certified check. The issuing of checks is a medium of closing transactions, but it is a recognized fact that any one receiving a check takes his chances that money will be in the bank to redeem it when presented. There are instances where the receipt of check on a cash transaction is declared to be only conditional and in the event the check turns out to be worthless the vendor may recover his gods. These cases, however, only deal with situations between the original parties.

In the instant case the driver of the truck was not only instructed to accept checks in payment but as agent of the shipper he had the implied authority to receipt the invoices as paid and he did in fact so mark the invoices. By this act of the agent of the shipper innocent third persons were presented with specific evidence that the invoices had been paid. Under these conditions the fact that they received an extraordinary discount, taken in connection with all the other circumstances, would not charge them with bad faith.

The judgment of the court below will be reversed and final judgment entered for plaintiffs in error.

HORNBECK and BODEY, JJ, concur.