48

THOMAS ET, PLAINTIFFS-APPELLEES, *v.* FIELDS, DEFENDANT AND BEACON MUTUAL INDEMNITY COMPANY, NEW PARTY DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26517.   Decided January 30, 1964.

*Messrs. Burgess, Fullmer, Parker & Steck,* for plaintiffs-appellees.

*Messrs. Merkel, Campbell, Dill & Zetzer,* for New Party defendant-appellant.

Kovachy, P. J. This is an appeal by the new party defendant-appellant on questions of law from a judgment entered upon a jury verdict in favor of the plaintiffs-appellees in the Cleveland Municipal Court.

The action in the trial court was on a supplemental petition brought against the claimed insurer, The Beacon Mutual Indemnity Company (hereafter referred to as Beacon), to satisfy a judgment obtained against Raymond Fields (hereafter referred to as Fields), following an automobile accident involving his automobile which purportedly was covered by a policy of insurance issued by Beacon. A policy of liability insurance was issued to Fields under the "Ohio Assigned Risk Plan" by Beacon on October 17, 1957, for a term of one year. The *procurer* of this policy of insurance was Dependable Service, Inc. (hereafter referred to as Dependable).

Fields had carried liability insurance on a 1955 Chevrolet automobile issued by Farm Bureau Insurance Company until October, 1957, when he was notified that the policy could not be renewed. Dependable sought him out and claimed that it could obtain insurance coverage for him, whereupon Fields authorized Dependable "to get insurance for him" for which he agreed to pay $25.00 for handling fees and a premium of $52.00.

An "Application for Liability Insurance Under Automobile Assigned Risk Plan" was filled out by Dependable and signed by Fields under oath. In the application Dependable was designated as "producer of record" and Fields agreed to pay all premiums when due, and Dependable further agreed to return its proportionate share of the return premium in the event that the policy was cancelled or the insurance terminated. Pursuant to the filing of this application with the "Ohio Motor Vehicle Assigned Risk Plan" the manager of said plan assigned Beacon the responsibility of issuing a liability insurance policy for Fields. Under the rules of the plan when a policy was to issue, the assigned company was required to notify the applicant that a policy would be issued to him "provided the premium in the

50

amount and sum stipulated is received within fifteen days * * *"
and that the policy would become effective at 12:01 A. M. on the
day following the day on which the premium was received by it.
Beacon complied with this rule by sending a letter directly to
fields with copies to the "Ohio Motor Vehicle Assigned Risk
Plan" and Dependable in which it notified Fields that it was
in a position to issue a policy to him at an annual premium
of $52.00. Fields had previously made arrangements with a
finance company, which was an affiliate of Dependable, for pay-
ment of such premium and agreed to repay the same in install-
ments. The *original policy* and a copy thereof were then sent
to Dependable by Beacon Insurance Agency which was desig-
nated in the policy as the representative and agent of Beacon.
Dependable kept the original policy and sent the copy to Fields.
Fields, in keeping with his agreement with Dependable and its
finance affiliate, made payments of $25.00, $10.00, $15.00, $15.00
and $10.00, for a total of $75.00. In the early part of May, 1958,
Fields went to the joint office of the Finance Company and
Dependable to make what he thought was his final payment
in the transaction. He believed that he owed a balance of only
$2.00 or $3.00 but not more than $7.00. The office girl in the
joint office told him that he owed $19.70, which he refused to
pay. He then asked for Mr. Lee who was the person with whom
he had made the original arrangements. On several occasions
he tried to reach Mr. Lee, but to no avail. On May 26, De-
pendable placed a stamp on the front sheet of Fields' original
policy, which read as follows:
"Cancelled
"Reason            Sold car
"Date              5-13-58
"Return Premium    $17.68
"Flat    Pro Rate    Short Rate
"Policy    Papers 5-26-58."
The upper portion of this front sheet containing the can-
cellation notation was sent to Beacon together with an Inter
Company Memo reading:
"Please send your return check direct to our office. We
have paid Mr. Fields his return premium. Thank you.
                    (Signed)   Ben Pearle"
                    (President of Dependable)

Beacon accepted this cancellation of the Fields policy and sent its check made payable to Dependable in the sum of $15.91 which it stated represented "the gross return less your commission of $1.77." Fields knew nothing about the cancellation of his policy.

On May 29, 1958, Fields paid $10.00 to Allied Credit Bureau, Inc., another affiliate of Dependable, in compliance with a notice sent him stating that $10.00 was still due on his account with them. He obtained a receipt which read, in part:

"5/29/58    Received from Ray Fields
"Ten Dollars for Dependable Insurance
"Amount of Account    $10.00
"Amount Paid              10.00
                         _____
"Balance due              -0-"

Fields received none of the premium money returned to Dependable by Beacon on cancellation of his policy. He did, however, on August 7, 1958, get a check in the amount of $10.00 from Dependable following some sort of a complaint made to the Better Business Bureau.

On July 4, 1958, Fields was involved in an accident and upon calling Dependable was told that his insurance policy had been cancelled. He then went to an attorney who forthwith wrote Beacon to inform it of the accident and asked it to accept responsibility for the accident under the insurance policy which Fields had with it and which Fields believed to be in full force and effect. Beacon informed counsel that Fields' insurance policy had been cancelled and that it would not assume responsibility with respect to the accident.

The bill of exceptions in this case discloses no evidence contra to that outlined above and, as a consequence, we conclude that in this case there were no questions of fact to be submitted to a jury but rather questions of law applicable to the facts presented in the case which could have properly been resolved by the court alone upon proper motions submitted to it.

Appellant's first assignment of error is:

"1. It was prejudicial error for the court to charge the jury on Section 3929.27, Revised Code."

This statute reads:

"A person who solicits insurance and procures the applica-

tion therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy.''

The court read a special charge to the jury before arguments to the effect that this statute constituted Dependable the agent of Beacon and that Beacon was responsible for everything done by Dependable in connection with the policy. The general charge of the trial court was to the same effect. This, beyond question, was error. Section 3929.27, Revised Code, makes a solicitor of an insurance application the agent of the party issuing the policy upon such application only to the extent of the matters and questions contained in the application. To hold, as the court here did, that the solicitor of insurance under the purview of this enactment becomes the agent of the insurer for the duration of the policy of insurance issued to the assured contravenes and goes beyond the clear intent and scope of the statute and is erroneous.

It is stated in *Pateras* v. *Standard Accident Ins. Co.*, 37 Ohio App., 383, at page 387, 174 N. E., 620, in reference to Section 9586, General Code, now Section 3929.27, Revised Code, that ''\* \* \* we think a proper construction of it is simply that the person who solicits insurance and procures the application is the agent of the insurance company for the purpose of such solicitation and procuration.  \* \* \*.''

Paragraph one of the syllabus of *Royal Insurance Company* v. *Silberman*, 24 C. C. (N. S.), 511, 34 C. D., 737, reads:

''1. Section 3644, Revised Statutes, making the agent who solicits insurance the agent of the company, does not make him the agent of the company for all purposes, but only those connected with the negotiation of the contract, and notice of loss given to such agent will not constitute notice to the company.''

It is clear and beyond dispute in this case that Dependable was only authorized to obtain insurance for Fields and that the application for such insurance designated Dependable as ''producer of record.'' When the policy of insurance was issued and the premium paid, the relationship between Fields and Dependable, so far as the insurance in question was concerned, terminated. The matter of financing the premiums by a financial affiliate of Dependable was a transaction separate and apart

from that of the insurance and had no bearing upon or connection with it. When Dependable stamped the original insurance policy "cancelled" and sent it to Beacon, it acted without authority or right, and while it may not have been improper of Beacon to send the original policy to Dependable, the procurer, rather than to Fields, under the circumstances Beacon accepted such cancellation on its face value without inquiry or investigation. In so doing, it seems to us, Beacon acted hastily and without justification since it was on notice in the application that Dependable was a mere "procurer" of the insurance and it had no other information or facts from which to assume that Dependable continued as the agent of Fields beyond such relationship. It would seem, therefore, that Beacon was careless in assuming that Dependable had authority to act for Fields beyond the scope of procurer without taking any steps to ascertain if such was the fact. Accordingly, the conduct of Beacon made it possible for Dependable to commit this unauthorized act for its own pecuniary benefit and Beacon, rather than fields, must suffer the consequences of the unauthorized cancellation of Fields' policy for the reason that it placed Dependable in the position to commit this unauthorized act. When one of two innocent persons must suffer loss, the loss must fall on him whose conduct brought about the situation or placed it within the power of a third person to cause the loss. 20 Ohio Jurisprudence (2d), 526, Estoppel and Waiver, Section 58.

The Supreme Court of Ohio states the law in paragraph two of the syllabus of *Wilson* v. *Hicks*, 40 Ohio St., 418, as follows:

"2. Where a loss has happened which must fall on one of two innocent persons, it must be borne by him who is the occasion of the loss, even without any positive fault committed by him, but more especially if there has been any carelessness on his part which caused or contributed to the loss."

In this regard, see:

*McHenry* v. *The Old Citizens National Bank of Zanesville*, 85 Ohio St., 203, 97 N. E., 395; *Edgar* v. *Haines*, 109 Ohio St., 159, 141 N. E., 837; *Koslen* v. *Lippincott Distributing Co.*, 22 Ohio Law Abs., 417 (App.).

It necessarily follows that under the plain facts of this case Beacon was not prejudiced by the charges of the trial court indicated above even though erroneous. Therefore, appellant's first assignment of error must be overruled.

In view of this holding, we find no other error prejudicial to the substantial rights of the appellant with respect to appellant's second and third assignments of error and overrule the same.

Judgment affirmed.

Exceptions.  Order see journal.

ARTL and CORRIGAN, JJ., concur.