[Cite as *Kaplan Trucking Co. v. Grizzly Falls Inc.*, 2017-Ohio-926.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104148

---

# KAPLAN TRUCKING COMPANY

PLAINTIFF-APPELLANT

vs.

# GRIZZLY FALLS INC., ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-826537

**BEFORE:** Laster Mays, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 16, 2017

**ATTORNEY FOR APPELLANT**

Marcia E. Hurt
5700 Pearl Road, Suite 202
Cleveland, Ohio 44129


**ATTORNEYS FOR APPELLEES**

**FOR WESTCHESTER FIRE INSURANCE COMPANY**

Geoffrey A. Belzer
Wilson, Elser, Moskowitz, Edelman & Dicker L.L.P.
55 West Monroe, Suite 3800
Chicago, Illinois 60603

**FOR GRIZZLY FALLS INC.**

Steve Barrett
P.O. Box 248
Pisgah, Alabama 35765

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant Kaplan Trucking Company ("Kaplan") appeals the trial court's grant of summary judgment in favor of defendant-appellee Westchester Fire Insurance Company ("Westchester"). After a thorough review of the record, we find that genuine issues of material fact exist, and the trial court erred in granting summary judgment. The matter is reversed and remanded.

## I.    BACKGROUND AND FACTS

{¶2} Kaplan is an Ohio based national freight hauling and brokerage company. On April 5, 2010, Kaplan entered into a brokerage agreement with Grizzly Falls, Inc., an Alabama trucking company ("Grizzly"), to haul cargo owned by independent third parties ("Contract"). The Contract included a clause indemnifying Kaplan against any and all losses, damages, and expenses relating to the loading, handling, transportation, unloading, or delivery of shipments, including the full value of the cargo involved, fees, and costs. Section 14 of the Contract required that Grizzly carry liability insurance for loss or damage to cargo for an amount not less than $100,000, and for Kaplan to be named an additional insured under the policy.

{¶3} Grizzly secured a cargo policy ("Policy") through insurance broker Kunkel & Associates, Inc. ("Kunkel"). Kunkel secured the Policy, issued by Westchester as the insurer, through Westrope & Associates ("Westrope"), a producer and broker for Westchester. Insurance documents delivered to Grizzly by Westrope included:

(1) the insurance binder, a contract for temporary insurance pending

issuance of the Policy;

(2) the insurance covernote ("Covernote"), issued on Westrope letterhead, listing Westchester as the insurer and Kunkel as the producer, and setting forth general terms encompassing the business relationship between Westrope and Kunkel;

(3) an insurance premium invoice, on a Westrope form, listing the premium amount and the percentage deduction for Kunkel's commission; and

(4) a contact list for Policy services, listing Westrope personnel. No Westchester personnel were listed as contacts.

{¶4} The Policy term was for the period of June 9, 2012 to June 8, 2013. The Policy covered cargo damage or theft under the cited conditions; however, coverage did not extend to cargo transported by vehicles that were not listed on the Policy schedule ("Schedule"). The failure to notify Westchester of a change of vehicle within 30 days of the triggering event resulted in a denial of coverage.

{¶5} Grizzly supplied Kaplan with a Certificate of Insurance ("Certificate") identifying Kaplan as the certificate holder, Kunkel as the producer, Westchester as the cargo insurer, and Progressive Insurance Company ("Progressive") as the automobile liability insurer. The Certificate also provided that, for the holder of the Certificate to qualify as an additional named insured, the underlying policy must include an additional insured endorsement.

{¶6} On March 26, 2013, Grizzly was involved in an accident while transporting three excavators pursuant to the Contract. The cargo was deemed to be a total loss. Kaplan asserts that Westchester agreed with the cargo owner that $105,824.40 was a reasonable value for the loss, and Kaplan remitted the sum to the cargo owner.

{¶7}     Kaplan demanded reimbursement from Grizzly.   Grizzly filed a claim with Westchester, who denied coverage on June 6, 2013.   Several months prior to the accident, Grizzly had purchased the truck involved in the accident to replace the truck listed on the Schedule.   Grizzly advised Kunkel, who contacted Progressive, but failed to notify Westchester.   As a result, the truck was excluded from coverage.

{¶8}     Kaplan filed suit against Grizzly and Westchester on May 8, 2014, alleging breach of contract by Grizzly, and equitable subrogation as to Westchester.   Based on Westchester's status as insurer, its direct involvement with the cargo owner in determining the loss value, and subsequent refusal to pay the claim, Kaplan declared entitlement as a successor, or subrogor, to Grizzly under the Policy.

{¶9}     On December 4, 2014, default judgment was granted against Grizzly for $105,824.40, plus attorney fees of $8,060.25,   statutory interest from the date of judgment and costs.   On February 19, 2015, Kaplan filed a "supplemental complaint" against Westchester pursuant to R.C. 3929.06(A)(2), which provides that a judgment creditor of an insured, who has not received payment within 30 days of the judgment, may file   a supplemental complaint against the   insurer to obtain payment of the judgment amount.

{¶10}     On July 31, 2015, Kaplan filed an amended supplemental complaint adding Kunkel as a party, and a negligence claim against Westchester and Kunkel regarding Kunkel's failure to advise Westchester of the change of vehicles under the policy.   Kaplan subsequently dismissed Kunkel pursuant to Civ.R. 41(A).

**{¶11}** Westchester filed for summary judgment on September 14, 2015. In addition to reliance on the Policy and related documents, Westchester argued that, based on the terms of a producer agreement between Westchester and Westrope, and case law interpreting R.C. 3929.27,[1] Westrope did not act as Westchester's agent.

**{¶12}** Kaplan filed a cross-motion for summary judgment on November 25, 2015. The trial court granted summary judgment for Westchester stating:

> There is no factual dispute that both Grizzly and its insurance broker, Kunkel, failed to timely notify Westchester or its alleged agent, Westrope, of Grizzly's newly acquired vehicle within the applicable period stated in the policy. Even assuming that Westrope had authority as an agent of Westchester to bind Westchester to the terms of the Westrope letter, no reasonable mind could conclude that the Westrope letter altered the terms of the policy between Westchester and Grizzly, such that Grizzly could update its policy with Westchester simply by informing Kunkel of a change in vehicles.
>
> Because the 2000 Mack Truck was not covered under the policy for the 03/26/2013 accident, Westchester did not breach an obligation to pay Grizzly under the policy. Therefore, judgment is rendered in favor of defendant Westchester Fire Insurance Company and against plaintiff Kaplan Trucking Company.

**{¶13}** This appeal ensued.

## II. ASSIGNMENT OF ERRORS

**{¶14}** Kaplan offers the following five assignments of error in support of its argument that the trial court erred in granting summary judgment for Westchester:

> I. The trial court erred as a matter of law in failing to construe the facts presented by plaintiff in opposition to Westchester's motion for

---

[1] R.C. 3929.27 provides that a person who solicits and procures insurance is considered the agent of the entity who issues the policy.

summary judgment in favor of plaintiff.

II.     The trial court erred as a matter of law in failing to find that reasonable minds could find that Westrope was the agent of Westchester when Westrope communicated with Grizzly about the Policy.

III.    The trial court erred as a matter of law when it concluded that Westrope's communications with Grizzly altered the terms of the Policy.

IV.   The trial court erred as a matter of law in failing to apply principles of estoppel to facts showing that Westchester caused Grizzly to direct notice of a change in vehicle to Kunkel.

V.     The trial court erred as a matter of law when it found that Grizzly's notice to Kunkel was insufficient to bind Westchester.

## III.    STANDARD OF REVIEW

{¶15}     Our standard of review for summary judgment appeals is de novo:

We review the trial court's decision on summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).   In so doing, we use the same standard as the trial court.   *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).   The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on an essential element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264 (1996).   Once the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact exists.   *Id.*   To satisfy this burden, the nonmoving party must submit evidentiary materials showing a genuine dispute over material facts.   *PNC Bank, N.A. v. Bhandari*, 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477, ¶ 9.

*Lillie & Holderman v. Dimora*, 8th Dist. Cuyahoga No. 100989, 2015-Ohio-301, ¶ 9.

{¶16} It is further axiomatic that the following elements must be established to support a grant of summary judgment:

The motion for summary judgment may only be granted when the following

are established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

*Id.*

## IV.  ANALYSIS

### A.  Assignment of Errors I, II, III and V

{¶17}  We combine our analysis of assignment of errors I, II, III, and V, for purposes of judicial economy.  Each of the cited errors constitute elements of the overarching issue of whether the trial court erred in denying summary judgment, and failing to construe the facts most favorably for Kaplan, by finding that: (1) Westrope was not the agent of Westchester when it communicated with Grizzly about the Policy; (2) notice to Kunkel was not notice to Westchester, (3) Westrope's communications did not alter the terms of the Policy, and (4) Grizzly's notice to Kunkel did not bind Westchester.

{¶18}  Synopsized, Kaplan obtained a default judgment against Grizzly for breach of contract for the cargo damages remitted to the cargo owner.  Kaplan also sued Westchester for equitable subrogation to Grizzly's rights under the Policy. Thirty days after obtaining the judgment, Kaplan filed a supplemental complaint to recover the judgment amount from Westchester pursuant to R.C. 3929.06, a codification of common law subrogation:

§ 3929.06 — Rights of judgment creditor of insured tortfeasor; binding legal effect of judgment between insurer and insured.

(A)(1)   If a court in a civil action enters a final judgment that awards damages to a plaintiff for injury, death, or loss to the person or property of the plaintiff or another person for whom the plaintiff is a legal representative and if, at the time that the cause of action accrued against the judgment debtor, the judgment debtor was insured against liability for that injury, death, or loss, the plaintiff or the plaintiff's successor in interest is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment.

(2)   If, within thirty days after the entry of the final judgment referred to in division (A)(1) of this section, the insurer that issued the policy of liability insurance has not paid the judgment creditor an amount equal to the remaining limit of liability coverage provided in that policy, the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount.   Subject to division (C) of this section, the civil action based on the supplemental complaint shall proceed against the insurer in the same manner as the original civil action against the judgment debtor.

*Id.*

{¶19}   Westchester countered with a coverage defense as provided by R.C. 3929.06(C)(1):

In a civil action that a judgment creditor commences in accordance with divisions (A)(2) and (B) of this section against an insurer that issued a particular policy of liability insurance, *the insurer has and may assert as an affirmative defense against the judgment creditor any coverage defenses that the insurer possesses and could assert against the holder of the policy* in a declaratory judgment action or proceeding under Chapter 2721. of the Revised Code between the holder and the insurer.

(Emphasis added.)   *Id.*

{¶20}   An insurance policy is a contract, the construction of which is to be interpreted using the rules of contract construction.   *Andrews v. Nationwide Mut. Ins.*

*Co.*, 8th Dist. Cuyahoga No. 97891, 2012-Ohio-4935, ¶ 14.   Except where language in the policy indicates otherwise, phrases and words are to be construed based on their plain and ordinary meaning.   *Id.* at  ¶ 15.   Ambiguities are construed liberally in favor of the insured.   *Id.* at  ¶ 16.   Contrary to Kaplan's assertion that the type of vehicle is irrelevant because the Policy premium was "per vehicle," it remains undisputed that the plain language of the Policy extends coverage to a scheduled vehicle.   *Id.* at ¶ 15.[2]

**{¶21}**   "'The notice provision of an insurance policy creates a condition precedent, non-compliance with which precludes recovery by the insured.'" *Id.* at ¶ 20, quoting *Am. Emps. Ins. Co. v. Metro Regional Transit Auth.,* 12 F.3d 591, 592 (6th Cir.1993), citing *Kornhauser v. Natl. Sur. Co.*, 114 Ohio St. 24, 150 N.E. 921 (1926).

**{¶22}**   It is undisputed   that Grizzly notified Kunkel of the vehicle change in September 2012, that Kunkel notified Progressive regarding the change for purposes of the vehicle liability policy, but that Kunkel admittedly failed to notify Westrope or Westchester.   As a result, in order for Grizzly's notice to be effective against Westchester, we must determine whether, viewing the evidence in a light most favorable to Kaplan, there is a genuine issue of material fact as to the agency relationship between Kunkel, Westrope, and Westchester.   "Notification given to an agent is effective as

---

[2] Kaplan argues that the proper inquiry is whether the insurer suffered prejudice by the failed notice, and asks that we apply the analysis set forth in *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927 (notice and consent to settle in uninsured motorist claim requires inquiry into prejudice to the insurer before coverage denial.)   However, Kaplan makes this argument for the first time before this court. We decline to consider this issue, "as [a] party who fails to raise an argument in the court below waives his or her right to raise it here."   *State ex rel. Zollner v. Indus. Comm. of Ohio*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993).

notice to the principal if the agent has actual or apparent authority to receive the notification." Restatement of the Law 3d, Agency, Section 5.02 (2006).

{¶23} Kaplan asserts two sources of agency liability, common law and statutory. We begin with the codification.

{¶24} R.C. 3929.27 provides:

§ 3929.27 Solicitor agent of company.

A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy.

Westchester denies applicability, contending that Kaplan misconstrues the language and the case law because the statute applies only to the solicitation process, and not to ongoing performance.

{¶25} Kaplan cites *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 590 N.E.2d 254 (1992), for the premise that the statute codifies the common law agency of an insurance agent, and the agency relationship only relates to the solicitation process. In *Damon's*, William J.F. Davis ("Davis") an independent insurance agent, was also the president of Affiliated Risk Managers Agency, Inc. ("Affiliated"), a company that provided insurance brokering services for several insurers including Fireman's Fund Insurance Companies, Inc. ("Fireman's"). Damon's had used Davis as its insurance broker for several years in providing coverage for new locations.

{¶26} A fire occurred, and Damon's filed a claim. Davis and Fireman's

agreed to cover Damon's losses, leaving Davis, Affiliated, and Fireman's to determine the question of whether, at the time that Davis interpreted Damon's fire insurance needs, Davis was acting as Fireman's agent.

**{¶27}** The court's consideration included R.C. 3929.27:

[R.C. 3929.27] is a codification of the common-law rule that "the acts of an agent within the scope of what he is employed to do and with reference to a matter over which his authority extends are binding on his principal." *Saunders* [*v. Allstate Ins. Co.*] 168 Ohio St. 55, 58-59,151 N.E.2d 1 (1958), was designed to protect an insured by imputing conduct of a soliciting agent to the principal, the insurer.

*Id*. at 609.

**{¶28}** However, the court determined that the analysis did not end there, because the court went on to find that the statute is not determinative of the scope of authority:

However, while R.C. 3929.27 identifies the insurance company as the party chargeable with any responsibility for knowledge or acts of its soliciting agent, this section is not determinative of the scope of the agent's authority. *Stuart v. Natl. Indemn. Co.*, 7 Ohio App.3d 63, 68, 454 N.E.2d 158 (8th Dist.1982).

*Id.*

**{¶29}** The court determined that Davis was not an agent under R.C. 3929.27 because the "mere consultation of the potential insured * * * is not tantamount to 'solicitation.'" *Id.* The court also addressed the distinction between insurance brokers, exclusive insurance agents, and independent exclusive agents:

"An 'insurance broker' is one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company and who, upon securing an order, places it with a company selected by the insured, or, in the absence of such

a selection, with a company selected by himself; whereas an 'insurance agent' is one who represents an insurer under an employment by it. Whether a person acts as a broker or agent is not determined by what he is called but is to be determined from what he does. In other words, his acts determine whether he is an agent or a broker."

*Id*. at 610, quoting 3 Couch, *Insurance*, Section 25:93, at 442-443 (2d Ed.1984).

{¶30}   Where the agent is independent or a broker, the agent may be an agent for the insured:

Accordingly, we hold that while an insurance broker (or independent insurance agent) is investigating the insurance requirements of his or her customer, the potential insured, such broker is not an agent for a particular insurer.   However, an insurance broker becomes an agent for a particular insurer when: (1) the broker notifies its customer that he or she intends to place the customer's insurance coverage with a particular insurer; or (2) the broker accepts an application for insurance on behalf of the customer.

*Id*. at 612.   The court determined that at the time Davis was determining the insurance needs of Damon's, he was Damon's agent, because the act did not fall under the R.C. 3929.27 agency umbrella.

{¶31}   We find that *Damon's* is instructive, but not determinative.   The facts of the instant case involve consideration of the agency relationship at the time the Policy was purchased that is specifically covered by R.C. 3929.27, as well as agency status at the time of notice.[3]

{¶32} Agency authority may be express or implied:

---

[3] R.C. 3929.27 does not make the broker an agent for all purposes.   *Klika v. Glenview Ins. Agency*, 8th Dist. Cuyahoga No. 36522, 1978 Ohio App. LEXIS 9378, *9 (Jan. 12, 1978). However, we also consider the purpose of the statute, which is to protect the insured during the procurement process.   *Damon's* at 609.

"Express authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred * * *" *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991).

An agent's implied authority may also arise from the principal's express delegation of actual authority.   Unless its extent is expressly limited by the principal, implied authority is that authority which is incidental and necessary for the agent to carry into effect the powers expressly conferred upon him by the principal. *Damon's Missouri, Inc. v. Davis*, 63 Ohio St.3d 605, 608, 590 N.E.2d 254   (1992) (citing *Spengler v. Sonnenberg*, 88 Ohio St. 192, 200-201, 102 N.E. 737 (1913).   An agent acting within the scope of his actual authority, expressly or impliedly conferred, has the power to bind the principal.   *Saunders v. Allstate Ins. Co.*, 168 Ohio St. 55, 58-59, 151 N.E.2d 1 (1958).

*Republic Waste Servs. of Ohio Hauling v. Pepper Pike Props*., 8th Dist. Cuyahoga No. 81525, 2003-Ohio-1348, ¶ 18-20.

**{¶33}**   The common law doctrine of apparent authority is an additional form of agency, that focuses on the third party's understanding:

Even if no actual authority has been given, the principal may be held liable

if the principal appeared to give authority to the agent [apparent authority].

A principal may be liable to a third party for the acts of the principal's

agent, even though the agent had no actual authority, if the principal has by

his words or conduct caused the third party to reasonably believe that the

agent had the requisite authority to bind the principal.   *Miller v. Wick Bldg.*

*Co.*, 154 Ohio St. 93, 95-96, 93 N.E.2d 467 (1950).

*Id*. at ¶ 21.   The test for apparent authority is whether the complaining party "acting as a

reasonable person, would believe the agent had authority based on all the circumstances.*"*

*Young v. Internatl. Bhd. of Locomotive Engineers*, 114 Ohio App.3d 499, 506, 683 N.E.2d 420 (8th Dist.1996), citing *Shaffer v. Maier*, 68 Ohio St.3d 416, 419, 627 N.E.2d 986 (1994).

**{¶34}** The trial court held in this case that "no reasonable mind could conclude that the Westrope letter altered the terms of the policy between Westchester and Grizzly, such that Grizzly could update its policy with Westchester simply by informing Kunkel of a change in vehicles." However, an interpretation of apparent authority does not require a determination that the communication served as an amendment of the Policy. Conversely, the question is whether evidence exists that may reasonably be construed to indicate that a party appeared to have authority to bind. *Id.*

**{¶35}** Westchester contends that the producer agreement with Westrope expressly disclaims agent liability:

> To the extent permitted by applicable law, and irrespective of the Producer's license designation, the Producer's relationship to the Company under this contract is that of insurance broker and not the Company's agent. It is understood and agreed that the insured is primarily the direct client of the retail or sub-producer and that the Producer may conduct business entirely through a sub-producer for transactions subject to this Amendment.

As Westchester concedes, R.C. 3929.27 specifies that Westrope served as Westchester's agent for purposes of the statute. The producer agreement, however, is not determinative on the issue of apparent authority as to third parties.

**{¶36}** Westrope delivered the Westchester policy binder and insurance Covernote to Kunkel. The Covernote is issued on Westrope's letterhead, and lists Kunkel as the producer, Grizzly as the insured, and Westchester as the insurer.

Westrope issued invoices to Kunkel on Westrope forms. The premium payable by Grizzly is $1,050, 10 percent of which is the commission payment to Kunkel, leaving a payment of $945 on the stated Policy premium of $1,050.

{¶37} The Westrope document entitled "Westrope Account Service Team — Motor Truck Cargo" advises the recipient to "[p]lease attach [this contact list] to your policy file." The document states, "[i]n addition to your Broker, [the] following is a list of people that are available for your servicing needs. By forwarding items to the proper person, we can provide you with the most efficient service for your account." Each listed contact is for Westrope personnel, including endorsement changes, and claims, "[the claims] department is responsible for notification of claims and working with your claims representatives. They act as the liaison between our agency and the company."

{¶38} The Westchester Policy contact information reveals only a contact source for reporting claims, an area also covered by the Westrope contact list. Westchester argues the Policy expressly states that, for changes to the Policy, "contact us." There is no accompanying contact information. In light of the Westrope contact list provided, and the lack of similar contact information from Westchester, the directive to "contact us" does not serve as exclusionary language as to Westrope.

{¶39} Thus, viewed in a light most favorable to Kaplan, there is a genuine issue of material fact as to Westrope's authority to bind Westchester, so that notice to Westrope equates to notice to Westchester. *See Miller,* 154 Ohio St. 93, 96, 93 N.E.2d 467; *Harless*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46; Civ.R. 56(C). However, for

Westchester to be bound by the failure of Kunkel to notify, the record must support the extension of apparent authority to Kunkel.

{¶40} The record does not reflect the existence of a producer agreement between Westchester and Kunkel limiting the agency relationship, or whether Westrope and Kunkel entered in such an agreement. The premium invoice was issued by Westrope to Kunkel, the Westrope contact document advises Grizzly, that "[i]n addition to your Broker," the listed Westrope personnel are responsible for Grizzly's servicing needs. In the appellate brief, Westchester describes Kunkel as Westrope's subagent. The certificate of insurance was issued by Kunkel identifying Westchester as the insurer.

{¶41} Instructive here as to subagency and liability:

> It is a universal rule of the law of agency that one who accepts an agency is responsible to his principal for the acts of his subagents, if he employs agents to work under him; and the act of any such subagent is regarded as the act of the agent himself, performed by the subagent for the benefit of the agent directly. Indirectly, of course, the act may be for the benefit of the principal, as was intended in this instance.
>
> The true conception of such a relationship is to establish an agency within an agency; that is, the subagent is the agent of the general agent, who is in fact his principal in many respects.

*State ex rel. Gray v. Alward*, 44 Ohio App. 281, 287, 185 N.E. 560 (5th Dist.1933). *See also* Restatement of the Law 3d, Agency, Section 1.04 (2006) (a subagent appointed by an agent with actual or apparent authority has two principals, the appointing agent and that agent's principal.)

{¶42} The email exchange between Kunkel and Westrope presents a question as to authority. Grizzly contacted Kunkel with the apparent belief that notice to Kunkel

was notice to the insurer. Kunkel contacted Westrope, indicating Kunkel's understanding that notice to Westrope was notice to the insurer. Westrope, in turn, contacted Westchester, and informed Kunkel of Westchester's determination that coverage would be effective as of that date. These factors support the existence of material facts as to the relationship between the parties.

{¶43} We find that there is a genuine issue of material fact on the scope of the agency relationship between the parties, required to determine the sufficiency of the notice. We disagree with the lower court findings on this issue.

### B.    Assignment of Error IV — Estoppel

{¶44}    The final assigned error is the trial court's failure to find that estoppel applies, also known as the two innocent party rule:

> The two innocent party rule states that if one of two innocent parties must suffer a loss, the loss must be borne by the party who could have prevented the loss or the party who rendered the injury possible. *Hillside Dairy Co. v. Cleveland Trust Co.*, 142 Ohio St. 507, 53 N.E.2d 499 (1944); *Edgar v. Haines*, 109 Ohio St. 159, 141 N.E. 837 (1923); *Wilson v. Hicks*, 40 Ohio St. 418, 1884 Ohio LEXIS 370 (1884); *Thomas v. Fields*, 8th Dist. Cuyahoga No. 26517, 1964 Ohio App. LEXIS 616, 94 Ohio L. Abs. 48, 196 N.E.2d 103 (Jan. 30, 1964); *Koslen v. Lippincott Distrib. Co.*, 8th Dist. Cuyahoga Nos. 15406, 15417, and 15418, 1936 Ohio Misc. LEXIS 1017, 22 Ohio L. Abs. 417 (Aug. 7, 1936). This rule applies even if there was no positive fault, but will especially apply if the losing party's carelessness contributed to the loss. *Wilson, supra.* The two innocent parties rule is based upon the principal of equitable estoppel.

*Delorean Cadillac v. Weaver,* 8th Dist. Cuyahoga No. 71827, 1997 Ohio App. LEXIS 4533,*13 (Oct. 2, 1997).

{¶45}    Kaplan cites this court's holding in *Thomas*. In *Thomas*, Dependable

Service, Inc. ("Dependable"), a "procurer" of insurance, solicited Raymond Fields ("Fields") to sell him automobile coverage. The insurance application, signed by Fields and listing Dependable as "producer of record," was submitted to the Ohio Motor Vehicle Assigned Risk Plan ("Plan"), who assigned Beacon Mutual Indemnity Company ("Beacon") to issue the insurance. *Id*. at *3.

**{¶46}** Thomas financed the insurance purchase through a company affiliated with Dependable. Thomas went to the office to make the final annual premium installment payment and was informed that he owned $19.70, though he had already paid a total of $75. He refused to pay and asked to see the original contact person who was not only unavailable at the time, but failed to respond to any telephone calls. In the meantime, Dependable notified Beacon that the insurance was cancelled due to a sale of the automobile, information that was wholly untrue.

**{¶47}** Thomas learned that he no longer had insurance when he was involved in an accident, and his claim was denied. Dependable canceled the policy without authority or right, and Beacon canceled the policy without inquiry to Dependable or to Thomas:

> When one of two innocent persons must suffer loss, the loss must fall on him whose conduct brought about the situation or placed it within the power of a third person to cause the loss. 20 Ohio Jurisprudence (2d), 526, Estoppel and Waiver, Section 58.

*Id*. at *10. The judgment was affirmed in favor of Thomas.

**{¶48}** A similar issue is presented here as to whether in light of the conduct by and relationship between the parties, the denial of coverage should be estopped.

Therefore, our finding that there are genuine issues of material fact requiring reversal and remand to the trial court also opens the door for the trial court's consideration of the estoppel argument. "[T]he determination of whether a person is an agent is usually a question of fact for a jury." *Damon's*, 63 Ohio St.3d 605, 612, 590 N.E.2d 254. *Arrow Internatl., Inc. v. Rolls-Royce Motors, Inc.*, 8th Dist. Cuyahoga Nos. 50305 and 50341, 1986 Ohio App. LEXIS 6437, *8 (Apr. 17, 1986).

## IV.    CONCLUSION

{¶49}    We find that, when viewed in a light most favorable to Kaplan, there are genuine issues of material fact as to the actual, implied, or apparent agency of Westchester, Westrope and Kunkel, as well as the equitable principle of estoppel. This case is reversed and remanded for proceedings pursuant to our decision.

It is ordered that the appellant recover from appellees costs herein taxed.    The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LARRY A. JONES, SR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR